George **FLEUTI**, Appellant-Petitioner,

v.

George **K. ROSENBERG**, District Director of Immigration and Naturalization Service, Los Angeles, California, Appellee-Respondent.

No. 17325.

United States Court of Appeals Ninth Circuit.

April 17, 1962.

Hiram W. Kwan and Betty Tom Chu, Los Angeles, Cal., for appellant.

Francis C. Whelan, U. S. Atty., Donald A. Fareed, Asst. U. S. Atty., chief of Civil Division, and James R. Dooley, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before CHAMBERS, HAMLEY and DUNIWAY, Circuit Judges.

HAMLEY, Circuit Judge.

George Fleuti, a resident alien, was ordered deported by the Immigration and Naturalization Service on the ground that at the time of his entry he was a "psychopathic personality." Having exhausted his administrative remedies, Fleuti brought this action in the district court to review that order. The district court entered judgment upholding the order of deportation, and Fleuti appeals.

■ For the reasons indicated in the margin we consider the case as before us for initial review, pursuant to 8 U.S.C.A., § 1105a, and 5 U.S.C.A., § 1031 et seq., rather than on appeal from a district court judgment.[1] Fleuti will be regarded as the petitioner and George K. Rosenberg, District Director of Immigration and Naturalization Service, Los Angeles, as respondent. Under the circumstances of this case our reviewing function is substantially the same as was that of the district court which initially reviewed the deportation order.

Fleuti contends that the order is invalid because not based upon reasonable, substantial and probative evidence. He further contends that execution of the order would violate the Due Process Clause of the Fifth Amendment because, as applied to him, the statute in using the term "psychopathic personality" is void for vagueness.

Fleuti is a native and citizen of Switzerland. He was admitted to the United States for permanent residence on October 9, 1952. He remained in this country until August, 1956, when he visited for a few hours in Ensenada, Mexico. He then re-entered as a returning resident alien and has remained in this country since then.

The charges upon which the deportation order is based were filed against Fleuti on August 5, 1959. It was alleged that Fleuti is deportable because, at the time of his 1956 entry, he was within a class of aliens excludable by the law existing at the time of such entry, namely aliens afflicted with "psychopathic per-

---

1. Section 5(a) of the Act of September 26, 1961, 75 Stat. 651, added a new section 106(a) to the Immigration and Nationality Act, 8 U.S.C.A. § 1105a. This new section provides that the procedure prescribed for the review of other federal agency orders (5 U.S.C.A. § 1031 et seq.) shall be the sole and exclusive procedure for the judicial review of deportation orders entered pursuant to section 242(b) of the Immigration and Nationality Act, 8 U.S.C.A. § 1252(b). Section 5(b) of the Act of September 26, 1961, provides that any judicial proceeding to review an order of deportation "which is pending unheard" in any district court on the effective date of that section (October 26, 1961), with exceptions not here relevant, shall be transferred for determination to the court of appeals having jurisdiction to entertain a petition for review under that section.

The case before us was disposed of by the district court prior to October 26, 1961, thus a transfer of the cause to this court under the statutory provision referred to above was not required at that time. We note, sua sponte, however, that Fleuti seeks to restrain the enforcement of a deportation statute on the ground, which we find substantial, that the statute is unconstitutional as applied to him. The case should therefore have been heard by a district court of three judges. 28 U.S.C. § 2282; Wolf v. Boyd, 9 Cir., 287 F.2d 520.

But if we now remand the case because of failure to convene a three-judge court, it would become a judicial proceeding "which is pending unheard" before the district court. It would then be necessary for the district court to transfer the case back to us as provided in section 5(b) of the Act of September 26, 1961 referred to above. It follows that, to avoid circuity, this court should consider the case as having been so remanded and transferred back and therefore now before us as an initial judicial review pursuant to 8 U.S.C.A. § 1105a and 5 U.S.C.A. § 1031 et seq.

sonality." The statutes cited as authorizing deportation on such a showing are sections 241(a) and 212(a) (4) of the Immigration and Nationality Act, 8 U.S.C.A. §§ 1251(a) and 1182(a) (4).[2]

It was not stated in the formal charges what specific physical or mental condition Fleuti had at the time of his 1956 entry which brought him at that time within the class of aliens afflicted with "psychopathic personality." Attached to the charges, however, was a sheet on which certain factual allegations were listed, as set out in the margin.[3] It is thereby indicated that the particular condition thought to bring Fleuti within the stated class was his alleged affliction with the desire for, and regular indulgence in, homosexual practices over a long period of years.

■ It is an established principle of federal adjudication that questions of constitutional law are not to be dealt with in advance of the necessity of deciding them. See Communist Party v. Subversive Activities Control Board, 367 U.S. 1, 72, 81 S.Ct. 1357, 6 L.Ed.2d 625. It would therefore at first blush appear that we ought to first consider Fleuti's contention that the deportation order is not based upon adequate evidence, on the theory that if this question is decided in his favor we need not reach the constitutional question which he poses.

■ The difficulty in following this course, however, lies in the fact that: (1) in order to determine whether the evidence is sufficient it is necessary to decide what is meant by "psychopathic personality"; (2) this term is not defined in the statute and respondent relies upon the legislative history in order to establish the meaning of the term;[4] but (3) if the statute, judged on its face and as applied to Fleuti, is void for vagueness, access may not be had to the legislative

2. Section 241(a) reads in part:
   "(a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—
   "(1) at the time of entry was within one or more of the classes of aliens excludable by the law existing at the time of such entry; * * *."
   Section 212(a) (4) reads in part:
   * * *.
   "(a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:
   *     *     *     *     *
   "(4) Aliens afflicted with psychopathic personality, epilepsy, or a mental defect; * * *."
   The quoted language of section 212(a) (4) was added to the statute on June 27, 1952, which was before Fleuti's first entry, but did not become effective until December 24, 1952, which was after that entry.

3. You were examined by a Medical Officer of the United States Public Health Service at Los Angeles, California on June 18, 1959; you were certified by an official of that Service, on that date, as being afflicted with "Class A Psychopathic Personality"; that official further certified on that date, that this "condition existed prior to and at the time of entry (August 1956)"; you have been afflicted with the desire for sexual relations with members of your own sex for approximately the past twenty-two (22) years; you have indulged in the practice of sexual relations with members of your own sex at periodic intervals, averaging about once a month for the past twenty-two (22) years.

4. Arguing that the term was intended to include, among others, anyone who was a homosexual or sex pervert at the time of entry, respondent calls attention to S. Rep. No. 1137, 82nd Cong., 2nd Sess. (1952). That report contains the following statement:
   "Existing law does not specifically provide for the exclusion of homosexuals and sex perverts. The provisions of S. 716 which specifically excluded homosexuals and sex perverts as a separate excludable class do not appear in the instant bill. The Public Health Service has advised that the provision for the exclusion of aliens afflicted with psychopathic personality or a mental defect which appears in the instant bill is sufficiently broad to provide for the exclusion of homosexuals and sex perverts. This change of nomenclature is not to be construed in any way as modifying the intent to exclude all aliens who are sexual deviates."

history in order to establish its meaning.[5]

It is therefore necessary for us to proceed at once to the constitutional question.

■ The question of whether a statute is void for vagueness most frequently arises in criminal prosecutions.[6] In such cases the underlying principle is said to be that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed. United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989.

But the Supreme Court has also applied this principle in civil proceedings, and in so doing has expressly ruled that a criminal penalty need not be involved. See Small Company v. American Sugar Refining Company, 267 U.S. 233, 239, 45 S.Ct. 295, 69 L.Ed. 589, where the court said, referring to other decisions in which the principle had been applied:

"* * * It was not the criminal penalty that was held invalid, but the exaction of obedience to a rule or standard which was so vague and indefinite as really to be no rule or standard at all."

In Jordan v. DeGeorge, 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886, the court examined, for vagueness, a statute which had been invoked in ordering deportation of that appellant. The court stated that it would do so notwithstanding the fact that it was not a criminal statute.[7] In that case the deportation had been ordered because a proscribed event had occurred after the alien entered this country, namely, "conviction in this country of any crime involving moral turpitude." The particular crime which was held to involve moral turpitude was conspiracy to defraud the United States of taxes on distilled spirits.

In the case before us, deportation has been ordered not because of any event occurring or act committed after Fleuti's last entry in August, 1956, but on the ground that, at the time of that entry, he was excludable as a "psychopathic personality."

However, in proving that, at the time of such entry, Fleuti was a "psychopathic personality," the Immigration and Naturalization Service has not relied exclusively upon evidence concerning Fleuti's condition prior to entry.[8] It presented evidence showing not only that Fleuti had regularly engaged in homosexual practices prior to his first entry in 1952, but that he had continued such practices after that entry and also after his second entry in 1956.[9] The finding

5. The doctrine of void-for-vagueness is premised in part on the fiction that all persons in fact know the contents of statutes. But this fiction does not extend to the point of assuming that all persons in fact know the relatively inaccessible legislative history of statutes. Thus it is uniformly held that in applying the doctrine, a federal statute must be judged on its face. See United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808; United States v. Spector, 343 U.S. 169, 171, 72 S.Ct. 591, 96 L.Ed. 863.

Once it is ascertained that the language of the statute is sufficiently definite to satisfy due process standards, the legislative history may become relevant. But the function of such history is not to provide support for an otherwise deficient law; rather it is to assist the court in best effectuating the legislative intent by possible construction and limitation of the statutory language. Hence, if the challenged class of offenses seems plainly within the terms of the statute, legislative history may be consulted to verify this conclusion. See Harriss, supra, 347 U.S. at 618, 620–622, 74 S.Ct. at 812, 813, 814.

6. See 109 U.Pa.L.Rev. 67 for an extensive discussion of the vagueness doctrine in the Supreme Court.

7. It was held, as a result of that examination, that the particular statute there in question was not unconstitutionally vague.

8. Nor was it required to, absent a question of statutory vagueness. See United States ex rel. Powlowec v. Day, 2 Cir., 33 F.2d 267.

9. This evidence consisted of Fleuti's acknowledged history of such practices from 1936 to 1959, and proof of two convictions obtained against him in the courts of California. One of these convictions, obtained in the Municipal Court of Los

that he was a "psychopathic personality" at the time of the 1956 entry is therefore based in part upon post-entry behavior.

Insofar as the record reveals, continuance of homosexual practices after Fleuti entered this country in 1952, and again in 1956, was not compulsive, but was a matter of choice. It follows that if, by reason of vagueness, the statute failed to advise him that homosexual practices conclusively evidence a "psychopathic personality" Fleuti was substantially prejudiced. As in the case of a vague criminal statute, he would thereby be deprived of notice that unless he refrained from such conduct harsh results might follow.

While the post-entry conduct was not itself the ground of deportation, but was used as evidence of a pre-entry deportable condition, the prejudice would nevertheless be substantial. The examiner might have found the evidence of pre-entry homosexual practices sufficient to support a finding of "psychopathic personality." But whether such a finding would have been entered in 1959, based on pre-entry conduct prior to October 9, 1952, or whether on such facts a charge would even have been brought, is a matter of speculation.[10] The fact that the examining officer chose to rely heavily upon post-entry behavior is some indication that a charge might not have been filed, or a finding entered, on pre-entry behavior alone.

From what has just been said, it will be observed that, for the purposes of this discussion, we regard Fleuti's conduct between his entry in 1952 and his brief absence in 1956, along with his conduct after his re-entry in 1956, as post-entry behavior. If, during the years 1952 to 1956, Fleuti was prejudiced by reason of the vagueness of the statute, he may assert such prejudice now, notwithstanding his temporary leave-taking in 1956. The prejudice occurred while he was a resident alien and his constitutional rights as such, acquired during that period, were not "washed out" by his afternoon visit to Ensenada, Mexico.

The question which remains to be decided is whether the deportation statute, in using the undefined term "psychopathic personality" is void for vagueness, as applied in this case.[11]

█ In determining whether a statute is vague in the constitutional sense, the test is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. Jordan v. DeGeorge, 341 U.S. at page 231, 71 S.Ct. at page 707. Or, as stated in United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, and United States v.

Angeles, under section 647(5) of the Penal Code of California, relating to lewd and dissolute persons, was for an act committed on August 23, 1953. The other, obtained in the Los Angeles Superior Court under section 288a of the Penal Code of California, relating to homosexual acts, was for an act committed February 16, 1956.

10. It was originally sought to deport Fleuti, pursuant to sections 241(a) and 212(a) (9) of the Immigration and Nationality Act, 8 U.S.C.A. §§ 1251(a) (1), 1182(a) (9), as a resident alien who had been convicted of a crime involving moral turpitude. The conviction relied upon was one of those referred to in footnote 9 above. A summary order of deportation was issued on the basis of that charge. It was later set aside by the examining officer, however, on the ground that the conviction relied upon, being a misdemeanor classified as a petty offense, was not one for which deportation could be ordered, in view of certain exceptions contained in the Act. But at the same time that this deportation order was set aside, the administrative proceedings were reopened to receive and consider the new charge that Fleuti was a "psychopathic personality" at the time of his last entry.

11. Following the technique employed by the Supreme Court in similar cases, we consider the question in the context of the case before us without undertaking to determine whether the statute is necessarily void for vagueness with regard to all possible applications. See Williams v. United States, 341 U.S. 97, 101; Jordan v. DeGeorge, 341 U.S. 223, 232, 71 S.Ct. 703.

Petrillo, 332 U.S. 1, 6, 67 S.Ct. 1538, 91 L.Ed. 877, would persons of "ordinary intelligence" be able to know what the statute means.

■ It has already been pointed out (see note 5 above) that in determining whether a statute is void for vagueness, the statute must be judged on its face, without reference to legislative history. We are mindful of the fact that language which is otherwise vague may be made sufficiently certain by definitive construction, even though the language construed is found in other statutes. Jordan, supra, 341 U.S. at 227, 71 S.Ct. at 705. However, at the time this post-entry conduct occurred, there was no decisional law as to the meaning of the term as used in this or any other federal statute.[12]

Dr. A. R. Dahlgren, the Public Health Service surgeon who had certified that Fleuti was a "psychopathic personality," testified that he did so because the Public Health Service manual for medical examination of aliens required him to so certify anyone who is a sex deviate. Dr. Dahlgren, who is not a psychiatrist, did not consider whether Fleuti's condition was hereditary, congenital, environmental or otherwise. His finding was merely that Fleuti was a sexual deviate and that "by the instructions which I must follow, I have to place these deviates in this category." [13]

Dr. David R. Harvey, Fleuti's attending psychiatrist, was of the opinion that Fleuti's deviation is not sufficient to justify the diagnosis of "psychopathic personality." He stated that the formal label for Fleuti's condition would be that of "sexual deviation, homosexuality, now under control." [14]

It is apparent that these two doctors, confronted with the identical facts, applied different standards in determining whether Fleuti was a "psychopathic personality." Dr. Dahlgren, feeling himself bound by the Public Health Service Manual, applied the test of whether Fleuti was a sex deviate, apparently ending the inquiry at that point. Dr. Harvey, while not insisting upon a showing of hereditary or congenital condition, considered such additional factors as the extent of the deviation, its effect upon other habits and activities, and whether control over the practice had been manifested.[15]

12. The term "psychopathic personality" was used in a Minnesota statute; however, the term was expressly and narrowly defined in the statute and such definition was further construed and limited by the Supreme Court of Minnesota. In the light of such definition and construction, the United States Supreme Court had no difficulty in holding that the statutory term, as there used, was not too vague and indefinite to constitute valid legislation. State of Minnesota ex rel. Pearson v. Probate Court, 309 U.S. 270, 60 S.Ct. 523, 84 L.Ed. 744. However, the government is not in a position to argue that this case adds certainty or definiteness to the term as usd in the Immigration Act, because Fleuti would clearly not be classed as a "psychopathic personality" under the Minnesota statute.

13. Dr. Dahlgren further testified: "We have to use certain terminology—and the rest of the world may not agree with this terminology; we are so ordered, therefore we do, * * *." The doctor agreed that a standard definition of "psychopathic personality" would specify that it be a "constitutional" disorder due to

hereditary or congenital conditions, and stated that he had no "strong feeling as to whether, according to traditional medical terms, Fleuti would be considered a 'psychopathic personality.'"

14. Dr. Harvey expressed this further opinion:
"* * * He (Fleuti) does not frequent homosexual hangouts, has no evident interest in youths, manifests no irresponsible trends, and has his main social contacts with respected members of the community. * * * His sexual drive—particularly at his age—is thought to be within his range of control, especially if he is under the supervision of continuing contact with a psychiatrist. * * * His deviation is not sufficient to justify the diagnosis of psychopathic personality * * * I do not think that another psychiatrist with adequate training and experience will be likely to disagree with my findings."

15. According to most present-day psychiatrists, "psychopathic personality" is attributable to environmental factors, whereas the earlier view was that this condition was either hereditary or con-

It is not surprising that these two doctors gave widely varying meanings to the term "psychopathic personality." [16] Congress was content to let "psychopathic personality" stand for "homosexuals" and "sex perverts," because the Public Health Service advised it that the term is "sufficiently broad" to accomplish this.[17] But the Public Health Service itself considered the term vague, saying in a report which was before the Congress in 1952:

"Although the term 'psychopathic personality' is vague and indefinite, no more appropriate expression can be suggested at this time." [18]

The Public Health Service view that the term is "vague and indefinite" is confirmed by authoritative writers in this field. Expert opinions to this effect, collected at page 940, note 33 of the article referred to in note 15 herein, are quoted in the margin.[19]

It therefore appears that the medical experts called to apply the term in this particular case are in disagreement as to what it means, the Public Health Service which asked Congress to use the term concedes that it is "vague and indefinite," and authoritative writers state that there is confusion and general disagreement as to its meaning.

The conclusion is inescapable that the statutory term "psychopathic personality," when measured by common understanding and practices, does not convey sufficiently definite warning that homosexuality and sex perversion are embraced therein. Since this statutory term thus fails to meet the test to be applied in determining whether a statute is vague in the constitutional sense, we hold that the statute is void for vagueness, as applied in this case. Enforcement of the order of deportation would therefore deprive Fleuti of the due process of law.

The order of September 22, 1959 for the deportation of George Fleuti is declared to be void, that order is hereby set aside, and enforcement of the order is enjoined.

---

genital. The term has always been understood as referring to a lifelong pattern of behavior in conflict with social norms but without accompanying guilt or anxiety. The medical authorities and writers who have expressed these views are collected in a Note and Comment, 68 Yale L.J. 931, at 935, note 10.

16. It is not established that Dr. Dahlgren would have differed with Dr. Harvey, if he had felt free to express his own opinion as to the term, rather than feeling obliged to apply the Public Health Service definition.

17. S. Rep. No. 1137, 82nd Cong. 2nd Sess. (1952).

18. Report of the Public Health Service on the medical aspects of H.R. 2379, in H.R. Rep. No. 1365, 82nd Cong., 2nd Sess. 46–47 (1952).

19. Noyes, Modern Clinical Psychiatry, 3d ed. 1941, 410: Psychopathic personality " * * * is considered by many to be a meaningless designation * * * not yet is there any common agreement * * * as to classification or * * * etiology."
Curran & Mallinson, Psychopathic Personality, 90 J. Mental Sci., (1944) 266, 278:

"The only conclusion that seems warrantable is that, at some time or other and by some reputable authority, the term psychopathic personality has been used to designate every conceivable type of abnormal character."
Guttmacher: Diagnosis and Etiology of Psychopathic Personalities as Perceived in Our Time, in Current Problems in Psychiatric Diagnosis, (Hoch & Zubin, ed. 1953), 139, 154:

"At present, the diagnosis of a psychopathic personality is practically meaningless."
Tappan, Sexual Offenses and Treatment of Sexual Offenders in the United States, in Sexual Offenses, 500, 507, (Radzinowics ed. 1957):

" * * * concensus is impossible in the no-man's land of psychopathic personality."
See also The Psychopathic Delinquent and Criminal by George N. Thompson, M.D. F.A. C.P., 42:

"The term 'psychopathic personality' has been used in an extremely broad sense in American psychiatry * * * Loose usage of the term has caused confusion in thinking."