Ray Paul CARSON, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17952.

United States Court of Appeals Ninth Circuit.

Nov. 27, 1962.

John E. Sparks, San Francisco, Cal., for appellant.

John W. Bonner, U. S. Atty., Melvin D. Close, Jr., and Thomas R. C. Wilson, III, Asst. U. S. Attys., for appellee.

Before HAMLEY, HAMLIN and MERRILL, Circuit Judges.

HAMLEY, Circuit Judge.

Ray Paul Carson was sentenced to imprisonment for ten years following his conviction, on a jury verdict, of receiving, concealing and facilitating the transportation and concealment of unlawfully imported marihuana, in violation of 21 U.S.C. § 176a. Appealing to this court Carson contends that the trial court erred in refusing to give instructions requested by him, or any instructions, relevant to the defense of entrapment.

Where the issue of entrapment is present, and there is conflicting testimony and credibility factors are involved, the trial court is required to submit the issue to the jury. Walker v. United States, 9 Cir., 298 F.2d 217, 225. An issue of entrapment is presented if a defendant makes such a contention during his trial and if there is evidence supporting the contention.

Carson made such a contention during his trial. His counsel, proceeding in accordance with Rule 30, Federal Rules of Criminal Procedure, 18 U.S.C.A., filed a written request that the court instruct the jury on the law of entrapment. Counsel submitted two proposed instructions on the subject in support of this request. An issue of entrapment was therefore presented if this contention was supported by evidence.

Carson testified in his own behalf. He stated that during the period in question he was a traveling salesman for an automobile cleaning product. On February 28, 1960 he arrived in Las Vegas, Nevada and on the following day he took his car to a garage for a check. The garage was operated by one Jerry Fitzgerald whom Carson had known for a year or more. They had previously smoked marihuana together and did so again on this occasion.

At Fitzgerald's request Carson gave him a small package of marihuana when they returned to the garage after a driving check of the car. On March 1, 1960, Carson took his automobile back to the garage and Fitzgerald quoted a price of from thirty-five to forty dollars for the repairs. Carson was unable to pay this sum at that time but arranged to bring in the cash at the end of the week. On this occasion Fitzgerald introduced Carson to one Jack Carter.

When Carson returned the automobile to the garage on March 2, so that the repairs could be made, Fitzgerald stated that he could not wait until the weekend for his money. In lieu of cash, and at Fitzgerald's request, Carson gave him a package of marihuana, it being arranged that the repairs would be completed by

5:30 P.M. that afternoon. When Carson returned late that afternoon he was told that the car was not ready.

For the next several days Carson returned to the garage for his car but each time was given some reason why the car was not ready. During this period Fitzgerald also began talking to Carson about a plan to have twenty pounds of marihuana taken to Alaska for sale, stating that Jack Carter was Fitzgerald's partner in this undertaking. Carson was urged to obtain the marihuana and was told that there would be big profits. Carson consistently declined to participate in such a transaction.

By mid-March Carson was told that the repair bill was eighty dollars and that if Carson could arrange to get some marihuana, the car would be released. Carson was anxious to get his automobile and agreed that if Fitzgerald would release it, he would see if he could get some marihuana. The car was then released and Carson drove to Bullhead City, Arizona, where he tried to get into the restaurant business.

About a week and a half later Fitzgerald telephoned Carson in Bullhead City and told him that he was going to put a lien against the car unless Carson paid the repair bill. He also told Carson: "You are either going to cooperate and get the marihuana, because we are ready to go and we need the money."

Carson then arranged to get some marihuana from a Frank Ewbank, in Bullhead City. He telephoned to Fitzgerald on April 14, 1960, to arrange for its delivery. The latter said he was very busy in the shop and that Jack Carter would meet Carson at Searchlight, Nevada and pick up the package.

The two met that afternoon at Searchlight. Carter was accompanied by Leonard S. Lang, a federal narcotics agent posing as a private individual. Lang was introduced to Carson as "Joe Ramsey." Carson then delivered the package of marihuana on the basis of which this conviction was obtained, and was immediately placed under arrest.

In addition to Carson's testimony there was testimony from Government witnesses that during the course of this transaction Fitzgerald and Carter became special employees of the Bureau of Narcotics, for compensation, with regard to the effort to obtain evidence against Carson. The Bureau became interested in the case when Fitzgerald contacted Carter regarding Carson's access to marihuana. Carter passed this information along to the Las Vegas Police Department, and the latter communicated with the Los Angeles office of the Bureau. During the course of the transaction both Carter and Fitzgerald had contact with Bureau agent Lang and both worked under his supervision.

The evidence reviewed above, considered apart from all other evidence introduced at the trial, if fully credited by the jury, tended to show that the criminal design with respect to the transaction in question originated with the employees of the Government and that Carson acquiesced therein only by reason of economic duress devised and exerted by these employees. Such evidence was therefore sufficient to warrant, although it did not require, a jury finding that Carson was unlawfully entrapped. See Sherman v. United States, 356 U.S. 369, 372, 78 S.Ct. 819, 2 L.Ed.2d 848; Sorrells v. United States, 287 U.S. 435, 452, 53 S.Ct. 210, 77 L.Ed. 413.

This being the case, the issue of entrapment was presented and Carson was entitled to a jury instruction on the subject. It is immaterial that the jury might not have believed Carson or that there was other evidence which, if believed by the jury, tends to negate the theory of entrapment. Walker v. United States, 9 Cir., 298 F.2d 217, 225; Hattem v. United States, 9 Cir., 283 F.2d 339, 341–342; Lutfy v. United States, 9 Cir., 198 F.2d 760.

It is likewise immaterial that there was considerable testimony from Carson and other witnesses to the effect that although he had never been convicted of a felony, he had engaged in other narcotics transactions. Evidence of this kind is relevant because it bears on the question of

whether the accused had an initial criminal intent. But it is for the jury to assess its probative value with regard to the ultimate issue of entrapment. See Sorrells v. United States, 287 U.S. 435, 451, 53 S.Ct. 210, 77 L.Ed. 413.

The Government argues in this court that the instructions offered by Carson at the trial did not correctly state the law.

Insofar as the record indicates, the Government did not, in the trial court, object to the form of the proposed instructions on entrapment. Nor was this the ground relied upon by the trial court in refusing to give the proposed instructions. As before indicated, the court declined to give any instruction on the subject because of the view that there was no evidence supporting such a theory.

■ In any event, where an instruction on entrapment is called for and a proposed instruction on the subject is defective, it is the duty of the trial court to give a correct instruction. Failure to give a correct instruction where entrapment is in issue, is plain error. See United States v. Sherman, 2 Cir., 200 F.2d 880, 883.

For the reasons indicated, it is necessary to remand this case for a new trial. Strictly speaking, no question as to the form of an instruction on entrapment is before us. But the Government's criticism of the form proposed by appellant indicates that such a problem may arise on remand. We call attention to the fact that an instruction given on entrapment, quoted in Silva v. United States, 9 Cir., 212 F.2d 422, there received the approval of this court.

■ Some adaptation of that instruction might be necessary to meet the circumstances of this case, since it should be made clear that special Government employees, as well as regular enforcement officers, are forbidden to engage in unlawful entrapment. In addition, since evidence concerning appellant's predisposition to commit offenses of this kind is relevant on the question of entrapment, a cautionary instruction advising the jury of the limited purpose of such evidence is appropriate. See Walker v. United States, 5 Cir., 301 F.2d 94, 98.

Appellant also argues that the second paragraph of 21 U.S.C. § 176a, permitting a presumption that any marihuana found in the possession of the accused has been imported into the United States unlawfully and that the accused knew of its unlawful importation is invalid, as applied in this case, under the Fifth and Tenth Amendments of the Constitution.[1]

■ Constitutional questions are not entertained in federal court in advance of the strictest necessity. Poe v. Ullman, 367 U.S. 497, 503, 81 S.Ct. 1752, 6 L.Ed. 2d 989; Fleuti v. Rosenberg, 9 Cir., 302 F.2d 652, 654. Appellant does not contend that section 176a is inherently unconstitutional regardless of the varying circumstances of individual cases, but only as applied under the evidence introduced in this case. The evidence relevant to the question of whether such a presumption has constitutional validity may be substantially different at the new trial herein ordered. Indeed, with the question of entrapment submitted to the jury at the new trial, it may be that appellant will be acquitted and hence have no occasion to again raise the constitutional question.

Thus we pass without decision at this time the constitutional question which may become moot, raised on facts which, as a result of the new trial, may become hypothetical. It need only be added that this panel could not have reversed on the constitutional ground, in view of the fact that a similar although perhaps not identical contention was rejected in Williams

---

1. Somewhat similar statutory presumptions are provided for in the second paragraph of 21 U.S.C. § 174, relating to the importation, receiving, concealing, buying, selling, or facilitating the transportation, concealment, or sale of any narcotic drug; and in 26 U.S.C. § 4704(a), relating to the purchase, sale, dispensing, or distribution of narcotic drugs other than in or from the original stamped package. These two statutory presumptions are compared in Harris v. United States, 359 U.S. 19, 23, 79 S.Ct. 560, 3 L.Ed.2d 597.

v. United States, 9 Cir., 290 F.2d 451, 453; and Caudillo v. United States, 9 Cir., 253 F.2d 513, 514–516.[2] See Upton v. Commissioner of Internal Revenue, 9 Cir., 283 F.2d 716, 723. A rehearing en banc would have been required.

The judgment is reversed and the cause is remanded for a new trial.

2. See, also, Rodella v. United States, 9 Cir., 286 F.2d 306, where the constitutional question was not dealt with, but where the presumption set out in 21 U.S.C. § 174 was applied.