Interim Decision #1481

## MATTER OF LAVOIE

In Deportation Proceedings

A-10767234

*Decided by Board May 28, 1965*

The term "psychopathic personality" in section 212(a)(4), Immigration and
Nationality Act, includes sexual deviates; therefore, respondent's admissions
of sexual deviation and homosexuality over a period of years prior to his
entry in 1960, coupled with a certification of the United States Public Health
Service (based on a diagnosis of his sexual deviation and history of homo-
sexuality) that he is a person of psychopathic personality, support a de-
portation charge under section 241(a)(1) of the. Act as one excludable at
entry under section 212(a)(4) of the Act because afflicted with psychopathic
personality.

CHARGE:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable
　　　　　　at time of entry—afflicted with psychopathic per-
　　　　　　sonality.

The case comes forward on appeal from the order of the special
inquiry officer dated March 11, 1965 again ordering that the respond-
ent be deported from the United States to Canada on the charge set
forth in the order to show cause.

The case was previously before us on appeal from the order of the
special inquiry officer dated January 30, 1964 ordering respondent
deported on the charge set forth in the order to show cause. The
record relates to a native and citizen of Canada, 41 years old, male,
single, who entered the United States for permanent residence at
Noyes, Minnesota, on January 26, 1960. He last entered the United
States at Noyes, Minnesota on or about May 5, 1960 as a returning
resident. The order to show cause charges that the respondent was
a sexual deviate at the time of his entries and is subject to deporta-
tion under section 241(a)(1) of the Immigration and Nationality
Act, in that, at time of entry he was within one or more of the classes
of aliens excludable by the law existing at the time of such entry, to

wit, aliens afflicted with psychopathic personality, under section 212(a)(4) of the Act.

At prior hearings there was introduced into the record a statement taken from the respondent dated August 30, 1961 to the effect that he was homosexual according to his interpretation of the term "homosexual" which meant to him a person whose sexual perversions are directed to members of his own sex; that he had had his first homosexual experience at the end of 1946 in Winnipeg, Manitoba, Canada; during 1946, 1947 and 1948 he had more than a dozen experiences; after 1948 until 1959 these experiences occurred once or twice a month; in the last two years prior to the making of the statement he had five or six such experiences. Doctor Beittel, a staff psychiatrist of the United States Public Health Service stated that the respondent had been a sexual deviate at least since 1946 and certified that the respondent was a sexual deviate in January of 1960 at least up to the time of his arrest, based upon an interview of approximately 60 minutes, although he concluded that from a psychiatric point of view, the alien could more accurately be described as a sexual deviate manifested by auto-eroticism and homo-eroticism. This witness stated that he was compelled by the directives of the United States Public Health Service Manual to classify the respondent on the basis of his diagnosis of sexual deviate and history of homosexuality as a psychopathic personality.

At prior hearings the respondent produced as a witness in his behalf Doctor Diamond, a specialist in psychiatry, who testified that he had spent eight hours over a period of eight weeks in examining and treating the respondent. His testimony is to the effect that the respondent was not afflicted with psychopathic personality or a character disorder but was suffering from a neurotic conflict over sex, whose symptoms were manifested by his homosexuality. He rejected the description of psychopathic personality as obsolete from a psychiatric viewpoint. He also testified that homosexuality is not an appropriate medical term, that there was no such diagnosis as homosexuality, and that from a psychiatric standpoint the respondent was not a homosexual. This doctor conceded that the respondent's sexual behavior was abnormal and a deviation from acceptable normal standards.

In our previous order of May 6, 1964 we quoted from Senate Report No. 1137 (82nd Congress, 2d Session, January 29, 1952) indicating that the Public Health Service had advised that the provision for the exclusion of aliens afflicted with psychopathic personality or a mental defect is sufficiently broad to provide for the exclusion of homosexuals and sex perverts and that the change of nomenclature

is not to be construed in any way as modifying the intent to exclude all aliens who are sexual deviates. Whatever the phrase "psychopathic personality" might mean to the psychiatrist, to the Congress it was intended to include homosexuals and sex perverts.[1]

We remanded the case in order to have included in the record the pertinent section of the United States Public Health Service Manual for the Medical Examination of Aliens and for characterization of the respondent's disorder by both psychiatrists in the light thereof, to take further testimony as to what pattern determines a sexual deviate or homosexual and to evaluate the evidence to determine whether a preponderance of the evidence establishes the charge.

At the reopened hearing held on October 1, 1964 only Doctor Beittel appeared as a witness. He reaffirmed his position that within the meaning of the pertinent section of the Manual for Medical Examination of Aliens the respondent was afflicted with psychopathic personality.[2]

The testimony of the psychiatric witnesses has served only to compound the confusion inasmuch as both appear to agree that the phrase "psychopathic personality" has no precise medical meaning and that "homosexual" is not a medical term. This difficulty however is recognized both in the legislative history previously referred to and in the Manual for Medical Examination of Aliens itself. As emphasized in the legislative history, the term "psychopathic personality" was understood to be broad enough to provide for the exclusion of homosexuals and sex perverts and was not to be construed in any way as modifying the intent to exclude all aliens who are sexual deviates. We are not concerned with the niceties of semantic differ-

---

[1] *Matter of P—*, 7 I. & N. Dec. 258; *Matter of S—*, 8 I. & N. Dec. 409; *Matter of R—*, 9 I. & N. Dec. 393; *United States* v. *Flores-Rodriguez*, 237 F.2d 405 (2d Cir., 1956) ; *Harb-Quiroz* v. *Neely*, 291 F.2d 906 (5th Cir., 1961).

[2] The Manual for Medical Examination of Aliens (1963) 6-5, which deals with psychopathic personality reads as follows:

(a) The legal term "psychopathic personality" is equivalent to the medical designation "personality disorder," which may be broadly defined as follows: "These disorders are characterized by developmental defects or pathological trends in the personality structure, with minimal subjective anxiety and little or no distress. In most instances, the disorder is manifested by a lifelong pattern of action or behavior (acting out), rather than mental or emotional symptoms." An example of such a certificate is Class A, Psychopathic personality, Inadequate personality.

(b) Under this legal category will be classified those applicants who are diagnosed as sexual deviates. In the medical examination of aliens this is a difficult diagnosis to establish. However, the examiner should assist the consular officer when possible when evaluating an applicant thought to come in this category.

ences indulged in by psychiatrists. The words, "psychopathic personality"[1] have become words of art which, whatever else they might mean, include homosexuality and sex perverts and the term is applied as it is commonly understood.[3] We conclude that the government has borne the burden of establishing that the respondent is deportable on the charge stated in the order to show cause.

The main thrust of counsel's argument is that the statute upon which the proceeding is based is unconstitutional and unconstitutionally applied as determined by the court in *Fleuti* v. *Rosenberg*, 302 F.2d 652 (9th Cir., 1962). However, on appeal, the constitutional question was bypassed, the decision below vacated and the case was decided on other grounds by the Supreme Court.[4] The constitutional question therefore remains unresolved and this is not the proper forum in which to try that question. The appeal will be dismissed.

**ORDER:** It is ordered that the appeal be and the same is hereby dismissed.

---

[3] *Harb-Quiros* v. *Nooly*, 291 F.2d 906 (5th Cir., 1961); *Matter of S—*, 8 I. & N. Dec. 409.

[4] *Rosenberg* v. *Fleuti*, 374 U.S. 449, 10 L.ed. 2d 1000 (1963).