**Thanh Long LE and Angelique Le, Petitioners,**

v.

**Philip L. WATERS, Acting Director, United States Immigration and Naturalization Service, San Francisco, Respondent.**

No. C–94–1727 MHP.

United States District Court,
N.D. California.

Aug. 18, 1994.

Donald L. Ungar, Simmons Ungar Helbush & Steinberg, San Francisco, CA, for plaintiffs.

Patricia A. Duggan, U.S. Attorney's Office, San Francisco, CA, for defendants.

## MEMORANDUM AND ORDER

PATEL, District Judge.

Petitioners Thanh Long Le and his daughter Angelique Le have filed a petition for a writ of habeas corpus seeking an order that the October 4, 1993 decision of the Board of Immigration Appeal (BIA) is in error as a matter of law. The BIA found that petitioners abandoned their applications for adjustment of status when they left the United States without authorization, and that therefore they could not be readmitted. This court has jurisdiction over this matter pursuant to 8 U.S.C. § 1105a(b) and 28 U.S.C. § 2241.

Having considered the parties' submissions and arguments, and for the reasons set forth below, the court now enters the following memorandum and order.

## BACKGROUND

The facts relevant to this petition are not in dispute.[1] Petitioner Than Long Le is a native citizen of Vietnam who came to the United States for the first time in 1985 to visit his mother, a lawful permanent resident of this country. Petitioner Angelique Le, his daughter, was born in France and accompanied him to the United States in 1985. Also with petitioners was Francoise Boisson, Angelique's mother. Boisson is not a petitioner here.

Shortly after their arrival, Than Long and Angelique Le applied for status as lawful permanent residents of the United States pursuant to the Immigration and Nationality Act, 8 U.S.C. § 1255. In May 1987, while their applications were still pending before the Immigration and Naturalization Service (INS), petitioners returned to France. According to petitioners, Boisson had developed a serious medical problem and sought treatment in France, and petitioners wanted to be with her during her treatment.

While petitioners were in France, the INS approved their applications for permanent resident status in September 1987. The INS sent petitioners' alien registration cards ("green cards") to their address in the United States. Than Long Le's mother forwarded the cards to petitioners in France.

When petitioners returned to the United States in September 1988, they presented their green cards and requested admission as lawful permanent residents. The INS refused to admit them on the ground that the cards had been issued in error, since petitioners had left the country during the pendency of their applications.

Following a hearing to determine petitioners' eligibility for admission, an immigration judge determined that their green cards were valid and had been properly approved and that therefore petitioners should be admitted to the country. She held that the applicable statutes and regulations permitted, but did not compel, the INS to deny the applications on the basis of petitioners' departure from the country. She further ruled that the INS had not in fact employed this reason for denial.

The BIA reversed, holding that the statutes and regulations mandated that the unauthorized departure to France terminated petitioners' applications. As a result, the Board ordered petitioners excluded from the United States.

## LEGAL STANDARD

The parties agree that the issue before the court is purely a legal question. The BIA's

---

1. All facts are drawn from the Administrative Record (AR) at 003–004 and from undisputed portions of the parties' submissions.

determination of such questions is reviewed de novo by the court. *Desir v. Ilchert,* 840 F.2d 723, 726 (9th Cir.1988).

## DISCUSSION

### I. *The Statute*

Immigrants may become lawful permanent residents of the United States in two ways. *See generally Oloteo v. INS,* 643 F.2d 679, 681 (9th Cir.1981). The first is to apply for an immigrant's visa at an American consulate in a foreign country and then to use that visa to enter the country. *See* 8 U.S.C. §§ 1151, 1154. The second method is available to those who are already in the United States in another immigration status. Those individuals, such as petitioners here, may apply pursuant to 8 U.S.C. § 1255(a) for an adjustment of their status. Section 1255(a) provides:

> The status of an alien who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a). As the BIA found (and as petitioners agree), the purpose of this second method is "to spare a qualifying applicant the time and expense of a trip outside the country to obtain an immigrant visa." Administrative Record (A.R.) at 004.

■ Petitioners point out, and respondent does not seriously dispute, that the statute itself does not mandate that a departure from the United States automatically terminates the application. Respondent notes that the provision is only available to aliens who have already been inspected and admitted or paroled into the country. Nonetheless, nothing in the statute specifically states that it is not available to individuals, such as petitioners, who have been admitted into the country but then have left again.

### II. *The Regulations*

■ However, the INS has promulgated regulations to implement this statutory mandate. Courts are required, of course, to pay strong deference to regulations promulgated by administrative agencies to enforce a statutory mandate. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694, *reh'g denied,* 468 U.S. 1227, 105 S.Ct. 28, 82 L.Ed.2d 921 (1984). "When the construction of an administrative regulation rather than a statute is in issue, deference is even more clearly in order." *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616, *reh'g denied,* 380 U.S. 989, 85 S.Ct. 1325, 14 L.Ed.2d 283 (1965). The agency's interpretation of the regulation must be given controlling weight unless it is "plainly erroneous or inconsistent with the regulation." *Id.* (citation omitted); *see also Chevron,* 467 U.S. at 844, 104 S.Ct. at 2782 (courts must defer to regulatory scheme unless it is "arbitrary, capricious, or manifestly contrary to the statute.").

The applicable regulations, which are found at 8 C.F.R. § 245.2, state that:

> .... The departure of an applicant who is not under deportation proceedings shall be deemed an abandonment of his or her application constituting grounds for termination, unless the applicant was previously granted advance parole by the Service for such absence, and was inspected upon returning to the United States....

8 C.F.R. § 245.2(a)(4)(ii). Petitioners did not seek, nor were they granted, "advance parole" from the INS. The BIA, in reversing the decision of the immigration judge, interpreted this regulation to mean that unauthorized departure during the pendency of an application automatically constitutes an abandonment of the application, and that the INS has no authority to grant an abandoned application. *See* A.R. at 004–005.

■ Petitioners argue that even if unauthorized departure constitutes an abandonment of the application, the INS still must terminate the application. In other words, such a departure does not automatically terminate the application, but rather serves as one grounds upon which the application *may*

be terminated.[2] Petitioners are correct that the regulation leaves open some ambiguity; in the end, however, the BIA's interpretation is clearly the most reasonable, especially given the deference owed to an agency's interpretation of its regulations. It is true that the regulation states that abandonment "constitut[es] *grounds* for termination." 8 C.F.R. § 245.2(a)(4)(ii) (emphasis added). The regulation does not say that such termination is "automatic," as other regulations do. *See, e.g.,* 8 C.F.R. § 205.1 (providing for "automatic revocation" of immigrant visas upon the death of the sponsoring petitioner); 8 C.F.R. § 204.2(h) (providing for "automatic conversion" of immigrant preference classifications under certain circumstances).

Nonetheless, as petitioners themselves point out, the plain meaning of abandonment is "to leave or forsake completely and finally." Random House Dictionary (1982). As stated by the BIA in its decision, there is "no authority to support the argument that an abandoned application can be granted." AR at 005. This interpretation of the language of the regulation is not arbitrary or capricious, nor is it inconsistent with the statutory scheme. In fact, given the purpose of the statute—to save aliens residing in the country from having to leave in order to apply for an immigrant's visa—a regulation holding that unauthorized departure from the country terminates the application is entirely consistent with the statute.

Conversely, petitioners' interpretation would require the INS to affirmatively terminate an application even, as here, where it

was unaware that the applicants had made an unauthorized departure. Given that such departures are, by their nature, without the INS' knowledge, it is difficult to see how the INS would ever be on notice to effect such a termination. Moreover, if, as petitioners urge, the INS were required to determine whether or not to terminate an abandoned application, neither the statute nor the regulations delineate any criteria by which the INS would be guided in making such a determination. Petitioners' interpretation of the regulations would apparently give the INS unfettered discretion to make this decision. In short, it is petitioners' reading of the regulations, and not respondent's, that would lead to an arbitrary and capricious result.

A review of the history of the applicable regulation further supports the BIA's, and respondent's, position. The regulation originally provided that an unauthorized departure would not necessarily result in termination if "it is determined by the officer having jurisdiction over [the applicant's] application that his departure was unintended and casual, that the absence was brief, and that he was inspected upon his return." *See Patel v. Landon,* 739 F.2d 1455, 1457 (9th Cir.1984) (citing 8 C.F.R. § 245.2(a)(3)). This exception was eliminated in 1986. According to the Federal Register, the change "eliminates the language concerning unintended or innocent and casual departure. Any departure without prior permission (advance parole) *will terminate* the adjustment application." 51 Fed.Reg. 7431 (March 4, 1986) (emphasis added).[3]

---

2. There is no real dispute that petitioners "abandoned" their application. The regulations clearly state that an unauthorized departure *"shall* be deemed an abandonment" of the application. *Id.* Petitioners make a half-hearted attempt to argue that an applicant cannot "abandon" his or her application absent proof of an intent to never again claim any right or interest in the application. However, the regulations explicitly state that an application will be deemed "abandoned" upon the applicant's unauthorized departure from the country.

3. The application form used by those seeking adjustment of their status begins with the following instruction:

WARNING: If you consider departing from the United States to any country ... before a decision is made on your application, consult

with the office of the [INS] processing your case before departure, since a departure from the United States may result in a termination of your application.

*Id.* Petitioner points to the fact that the warning states that a departure *"may* result in the termination of your application" as evidence that the termination is not automatic. However, given that it is still possible to obtain advance parole and therefore avoid termination, this permissive language gives no support to petitioners' argument.

Although petitioners' I–485 forms were not submitted as part of the administrative record, petitioners do not dispute that their forms contain such a warning. They did claim in the proceedings below however, that they did not understand the warnings. As respondent points out, petitioners were represented by counsel, *see*

The deletion of the exception for "unintended and casual" departures may also explain why the regulation now contains some ambiguity. Prior to this deletion, an unauthorized departure did not automatically result in termination because an INS officer could still determine that the departure was "unintended and casual." Thus, at that time it was more proper to designate an unauthorized departure as a "grounds for termination." While the regulation in truncated form does not read as artfully as it might, its meaning is still clear: termination is now automatic if departure from the country has not previously been authorized.

This case is readily distinguishable from those cases cited by petitioner, in which the INS was found to have improperly added substantive requirements to its statutory mandates. For instance, in *Dabaghian v. Civiletti*, 607 F.2d 868 (9th Cir.1979), the Ninth Circuit held that the INS could not deem a legally valid marriage invalid for purposes of adjustment of status. *Id.* at 871. The court ruled that the statute permitted an exception for sham marriages but not for those that the INS determined were legally valid but "factually dead." *Id.* The court determined that the INS could not add a substantive requirement that was not authorized by, and inconsistent with, the statute. *Id.; see also Palmer v. Reddy*, 622 F.2d 463 (9th Cir.1980) (rejecting INS' requirement that applicants prove that stepchildren be part of a "close family unit" to be eligible for visa preference, where "unqualified language" of the statute provides no such requirement).

 Here, by contrast, the regulation adds no substantive requirements but only mandates that certain procedural requirements must be met, *i.e.*, that applicants cannot leave the country pending approval without advance authorization. The statute clearly and explicitly authorizes the creation of regulations to implement the statutory mandate. *See* 8 U.S.C. § 1255(a) ("status of an alien ... may be adjusted by the Attorney General, *in his discretion and under such regulations as he may prescribe*, to that of an alien lawfully admitted for permanent resi-

dence...."). Such regulations and the interpretations given them by the agency are valid as long as they are not contrary to the statutory mandate. *Chevron*, 467 U.S. at 843–44, 104 S.Ct. at 2782.

In sum, the applicable regulations clearly state that unauthorized departure will be deemed an abandonment of the application for lawful resident status. The BIA has interpreted its regulations to mean that an abandoned application cannot be granted. A.R. at 004–005. Given the language of the regulation, the interpretation of that regulation by the agency, and the deference owed by the court to that interpretation, it is clear that petitioners cannot prevail and that the BIA's decision must be affirmed.

### III. *Void For Vagueness*

 Finally, petitioners argue that the regulation is void for vagueness. Although vagueness challenges are most often brought against criminal statutes, the doctrine is also applicable in the context of immigration proceedings. *See Jordan v. De George*, 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886, *reh'g denied*, 341 U.S. 956, 71 S.Ct. 1011, 95 L.Ed. 1377 (1951); *Fleuti v. Rosenberg*, 302 F.2d 652 (9th Cir.1962), *vacated and remanded on other grounds*, 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963). In determining whether a regulation is impermissibly vague, the court must examine "whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Fleuti*, 302 F.2d at 656 (holding that term "psychopathic personality" in deportation statute is too vague and indefinite to give warning that it encompasses homosexuality).

 As discussed above, petitioners are correct that there is some slight ambiguity in the regulation, which states that an unauthorized departure is deemed "an abandonment constituting grounds for termination." Nonetheless, the warning is "sufficiently definite" and clearly puts applicants on notice that they will not be able to pursue their applications if they leave the country without advance permission. As conceded by petitioners, the ordinary meaning of the word

AR at 068, and at any rate are bound to follow the instructions. *See* 8 C.F.R. § 103.2(a) (in-

structions on applications have the force of federal regulations).

"abandonment" is to relinquish forever, without any intent of reclaiming. The "common understanding" of the regulation is that an application is necessarily cannot be granted once it is abandoned.

Accordingly, the regulation is not void for vagueness.

*CONCLUSION*

For the foregoing reasons, petitioners' writ is DENIED.

IT IS SO ORDERED.