(No. 33825.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LIBBY OFFICER, Plaintiff in Error.

*Opinion filed January 24, 1957.*

Moore, Ming & Leighton, of Chicago, (George N. Leighton, of counsel,) for plaintiff in error.

Latham Castle, Attorney General, of Springfield, and John Gutknecht, State's Attorney, of Chicago, (Fred G. Leach, Edwin A. Strugala, Irwin D. Bloch, John T. Gallagher, Rudolph L. Janega, William L. Carlin, and Cecil A. Partee, of counsel,) for the People.

Mr. Justice Schaefer delivered the opinion of the court:

Libby Officer and Mable Grant were indicted for larceny in the criminal court of Cook County. Mable Grant pleaded guilty. Libby Officer pleaded not guilty and waived a trial by jury. The court found her guilty and sentenced her to the State Reformatory for Women for a term of not less than one year nor more than seven years.

She prosecutes this writ of error, and first contends that the evidence failed to prove her guilt beyond a reasonable doubt. William Mars, "protection manager" for Chas. A. Stevens & Co., testified that on November 29, 1954, about 4:30 P.M., he saw the defendant take an evening gown

from a rack in the company's store and hand it to Mable Grant; that they carried the dress to a corner of the department, where Mable Grant rolled the dress around a hanger and put it underneath her skirt while the defendant stood in front of her to protect her from view; that as the defendant and Mable Grant were leaving the store he identified himself as a police officer, whereupon defendant left the store while he succeeded in arresting Mable Grant. Mable Grant testified that she had been acquainted with defendant about fifteen years; that she and defendant had lunch together downtown on November 29 and then went together to the Chas. A. Stevens store about 4:00 or 4:30 P.M.

The defense rested on the testimony of three witnesses: Carlos Officer, the defendant's husband; Jesse Jackson, proprietor of a tavern on East Seventy-first Street in Chicago, and Charles Russell, who was employed as a porter in the tavern on November 29, 1954. Each of these witnesses testified that the defendant worked as a barmaid in the tavern during the last week of November and the first week of December, 1954, and that she worked there on the afternoon of November 29. Jackson, the proprietor, identified certain records as those kept in the course of his business. They purported to show the hours worked by the defendant and the amount of sales made by her during the time she worked for him. They show that defendant worked on the afternoon of November 29, 1954.

In rebuttal Marie Cleveland and Irene Staton, employed in the special service and protection departments, respectively, of Marshall Field and Company, were called as witnesses. Each of them testified that she saw defendant and Mable Grant about 4:00 P.M. on November 29 in Field's, about half a block from the store of Chas. A. Stevens & Co. Irene Staton testified that she watched defendant and Mable Grant for about 10 minutes on the fourth floor of Field's

but lost sight of them when she attempted to follow them down the escalator. She then telephoned a description of the two women to Carson Pirie Scott and Company. From Carson's a description was sent by teletype to all the stores on State Street. A record of this message as received at Field's was introduced in evidence.

In our opinion the evidence was sufficient to sustain the conviction. According to the testimony of Mars and Mable Grant, defendant was present in the store of Chas. A. Stevens & Co. in the late afternoon of November 29, 1954. Two employees of another department store, less than a block away, testified that she was in that store half an hour earlier. The proprietor of a tavern located more than eight miles from the scene of the theft, one of his employees, and defendant's husband testified otherwise. The weight to be given to the testimony of the witnesses was for the trial court to determine, and where, as here, there is no more than a conflict in the evidence, the judgment will not be disturbed. (*People* v. *Martishuis,* 361 Ill. 178; *People* v. *Bolger,* 359 Ill. 58.) While Mable Grant was an accomplice, and this fact has a bearing upon her credibility, (*People* v. *Crump,* 5 Ill.2d 251,) she was corroborated by other witnesses, and the credibility of her testimony was likewise for the trial court. *People* v. *Hamby,* 6 Ill.2d 559; *People* v. *Mitchell,* 368 Ill. 399; *People* v. *Karatz,* 365 Ill. 255.

Defendant next contends that the prosecution failed to prove the value of the property stolen, an essential element of the crime of larceny. The indictment charged that defendant stole a dress valued at $175. The witness Mars testified that in his opinion the fair market value of the dress was $175. In the absence of any objection this testimony was adequate to support the finding of the trial judge that defendant was guilty of larceny as charged in the indictment. *People* v. *Franklin,* 415 Ill. 514; *Little* v. *People,* 157 Ill. 153.

Defendant also complains that prejudicial error occurred when her prior criminal record was brought to the attention of the judge after he had found her guilty but before he had ruled on her motions for a new trial and in arrest of judgment. After the finding of guilt the prosecutor moved that the defendant's bail be increased from $2500 to $7500. And in connection with that motion he read to the court an impressive record of defendant's previous convictions. The court increased the bond to $5000.

Section 12 of division XV of the Criminal Code provides for increasing bail after "any defendant has been convicted * * * and sentence has been imposed." (Ill. Rev. Stat. 1955, chap. 38, par. 780.) The statute thus recognizes that conviction of the current crime is a relevant factor in determining whether bail should be increased. While a literal reading might suggest that nothing short of conviction and the imposition of sentence is a sufficient change of circumstance to warrant an increase in bail, the history of the provision rebuts the suggestion. Section 12 of article XV was amended in 1917 to meet a specific problem. Prior to the amendment, liability on original bail bonds terminated with conviction, and a convicted defendant had to be committed until he could file a record in the reviewing court and obtain a *supersedeas* from that court. (*People* v. *Ottman,* 353 Ill. 427.) The 1917 amendment cured that defect by providing that the existing recognizance could remain in force, or bail could be increased, during a reasonable period within which application might be made to the reviewing court for a *supersedeas.* The language used was appropriate to meet the specific problem with which the legislature was dealing. The purpose of the amendment was to expand, not to contract, the power of the presiding judge.

That there is nothing unusual, or inherently prejudicial, about an increase in bail pending sentence appears from Rule 32 of the Federal Rules of Criminal Procedure,

which provides: "Pending sentence the court may commit the defendant or continue or alter the bail." (18 U.S.C.A. 350.) Rule 1 of the earlier rules of the Supreme Court of the United States governing appeals in criminal cases provided: "(1) Sentence. After a plea of guilty, or a verdict of guilt by a jury or finding of guilt by the trial court where a jury is waived, * * * sentence shall be imposed without delay unless * * *. Pending sentence, the court may commit the defendant or continue or increase the amount of bail." (292 U.S. 661.) Along with the fact of guilt of the current crime, the past record of the defendant is of course material in determining the amount at which bail should be fixed. *People ex rel. Sammons* v. *Snow*, 340 Ill. 464; see 72 A.L.R. 801-822.

Nothing in the record before us suggests that the prosecution acted otherwise than in good faith in bringing the prior convictions of the defendant to the attention of the presiding judge. If, as defendant suggests, the practice is susceptible of prejudicial use by the prosecution in particular instances, the trial court has ample authority to afford the defendant the necessary protection.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*