747 F.2d 1120
 UNITED STATES of America, ex rel. Taylor FITZGERALD,
Petitioner-Appellant,
v.
James JORDAN, Superintendent, Cook County Juvenile Detention
Center, Phillip Hardiman, Director, Cook County Department
of Corrections, and Richard M. Daley, State's Attorney of
Cook County, Illinois, Respondents-Appellees.
 No. 84-1687.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 7, 1984.
Oct. 17, 1984.
 
 Alison Edwards, Asst. Public Defender, Chicago, Ill., for petitioner-appellant.
 Keven Sweeney, Asst. State's Atty., Chicago, Ill., for respondent-appellee.
 Before COFFEY, Circuit Judge, PELL, Senior Circuit Judge, and DUMBAULD, Senior District Judge.*
 COFFEY, Circuit Judge.
 
 
 1
 The petitioner, Taylor Fitzgerald, appeals the decision of the District Court for the Northern District of Illinois dismissing his petition for habeas corpus relief. We affirm.
 
 I.
 
 2
 On October 28, 1983, Taylor Fitzgerald, 16 years of age, was arrested and charged by indictment with the crimes of attempted murder and armed robbery. He was brought before an adult criminal trial court pursuant to the "Automatic Juvenile Transfer Statute," Ill.Rev.Stat. ch. 37, Sec. 702-7(6), which provides:
 
 
 3
 "The definition of a delinquent minor under Section 2-2 of this Act shall not apply to any minor who at the time of an offense was at least 15 years of age and who is charged with murder, aggravated criminal sexual assault, or armed robbery when the robbery was committed with a firearm. These charges and all other charges arising out of the same incident shall be prosecuted pursuant to the Criminal Code of 1961, as amended."[1]
 
 
 4
 His bond was set at $50,000, but was subsequently reduced to $40,000 on October 31st. Some two months later, on December 27, 1983, the petitioner Fitzgerald challenged the constitutionality of the Automatic Juvenile Transfer statute, ch. 37, Sec. 702-7(6). The trial judge determined that the Automatic Juvenile Transfer statute violated his rights under the Equal Protection Clause of the Fourteenth Amendment and dismissed the case.[2]
 
 
 5
 On that same day, the State filed its notice of appeal to the Illinois Supreme Court as provided in Ill.Rev.Stat. ch. 110A, Sec. 302. Section 302 states:
 
 
 6
 "(a) Cases Directly Appealable. Appeals from final judgments of circuit courts shall be taken directly to the Supreme Court (1) in cases in which a statute of the United States or of this State has been held invalid ...."[3]
 
 
 7
 The State also filed a motion requesting that the petitioner be required to post bail pending appeal pursuant to Ill.Rev.Stat. ch. 110A, Sec. 604(a)(3):
 
 
 8
 "A defendant shall not be held in jail or to bail during the pendency of an appeal by the State, or of a petition or appeal by the State under Rule 315(a), unless there are compelling reasons for his continued detention or being held to bail." (Emphasis added).
 
 
 9
 Pursuant to the State's motion for bail pending appeal, on January 4, 1984, the trial court held a hearing on the question of holding the petitioner to bail during the pendency of the State's appeal. At the hearing, the confession of the petitioner was presented to the court in which he admitted that he was a knowing participant in the armed robbery; in his confession he also stated that "dog," his accomplice to the alleged crime, handled the gun. However, Detective Thomas O'Connor of the Chicago Police Department, Homicide Division, testified that the victim of the armed robbery identified the petitioner as the person who fired a shot at him as the suspects fled from the scene.[4] At the conclusion of the hearing, the trial court determined that "compelling reasons" existed to hold the petitioner to bail pending appeal. After this ruling, the State and petitioner's counsel presented arguments as to the amount of bail to be posted. The State noted the seriousness of the offense while petitioner's counsel stressed the petitioner's lack of a prior record, his indigent status, and the willingness of his parents to closely supervise him during the pendency of the appeal. Upon conclusion of the State's and petitioner's presentations, the trial court determined that nothing had changed since the petitioner's earlier bail hearing where bail was reduced to $40,000, requiring 10 percent, or $4,000, in cash for release and thus bail remained the same.
 
 
 10
 On two separate occasions, January 17 and March 5, 1984, the Illinois Supreme Court in unsigned and abbreviated orders denied the petitioner's request for release from custody or a reduction in bail. In April, 1984, the petitioner filed a motion in the Northern Illinois District Court seeking habeas corpus relief. The district court dismissed the petition but allowed leave to appeal to this court.
 
 
 11
 On appeal, the petitioner initially asserts that he is being illegally and unconstitutionally detained in violation of the Fourteenth Amendment as there is no charge pending since the statute transferring him to adult court has been ruled unconstitutional. He also contends that any further detention during the pendency of the State's appeal violates his Sixth Amendment speedy trial right. He next alleges that even if his speedy trial right has not been violated, the language in Ill.Rev.Stat. ch. 110A, Sec. 604(a)(3), reciting that a person may be held to bail pending the State's appeal when there exist "compelling reasons" is unconstitutionally vague on its face and also as applied in his case, and thus violates his Fourteenth Amendment due process rights. Finally, the petitioner asserts that the $40,000 bond requiring a $4,000 cash outlay constitutes excessive bail in violation of the Eighth Amendment of the United States Constitution.
 
 II.
 
 12
 A. The Pending Charge.
 
 
 13
 The petitioner asserts that he is being held without a pending charge in violation of his rights under the Fourteenth Amendment. Basically, his position is that since the trial court dismissed the charges against him, the state cannot hold him to bail. However, prior to addressing the substance of this issue, it is imperative to understand the proceedings which took place in the Illinois trial court. Our review of the record leads us to conclude that the trial court neither acquitted the petitioner nor dismissed the indictment against him based upon any substantive grounds when it made its finding that Ill.Rev.Stat. ch. 37, Sec. 702-7(6) was unconstitutional. Neither party to this appeal contends that such was the effect of the trial court's actions. Rather, both parties appear to agree that the trial court dismissed the indictment because it found the Automatic Juvenile Transfer statute violated the Fourteenth Amendment's Equal Protection Clause. Therefore, the trial court dismissed the case apparently because it was without jurisdiction to proceed.
 
 
 14
 The first issue before this court is whether the trial court's action in declaring the statute unconstitutional in fact dismissed the charges or whether it merely acted as a temporary suspension of the indictment pending review by the Illinois Supreme Court.[5] We hold that the latter interpretation is proper based upon our review of the applicable Illinois statutes. This position essentially answers the question that in Illinois criminal charges are not actually "dismissed" until the direct appeal process is exhausted.
 
 
 15
 In his brief, the petitioner primarily relies on Ill.Rev.Stat. ch. 110A, Sec. 302 which provides that the Illinois Supreme Court shall take a direct appeal from the circuit court upon the rendering of a "final judgment." He interprets the language "final judgment" to mean that a trial court's dismissal of the case is a final judgment and constitutes a dismissal of all pending criminal charges irrespective of the state's right to appeal. Since ch. 110A, Sec. 302 is a Supreme Court Rule, it is possible that when the Illinois Supreme Court approved of the language, "final judgment," it meant "just that: final." Petitioner's reply brief at 5. However, it is equally plausible that the court meant to say "final order" since a final judgment is usually not considered to be rendered until the direct appeal route is exhausted or the time allowed to appeal has expired. See Supplement to Historical and Practice Notes, Ill.Ann.Stat. ch. 110A, Sec. 302 (Smith-Hurd 1984 Supp.) ("In Garcia v. Tulley, 72 Ill.2d 1, 377 N.E.2d 10, 17 Ill.Dec. 820 (1978), the Supreme Court interpreted Rule 302(a) to allow direct appeal not only of final orders of the circuit court, but also of interlocutory orders appealable as of right under Rule 307." (emphasis added)).
 
 
 16
 However, adoption of either position is not critical to the outcome of this case since an examination of section 302 reveals that it is in essence an expediting statute which allows the parties to bypass the Illinois appellate court system and go directly to the Illinois Supreme Court in cases where an Illinois statute, such as ch. 37 Sec. 702-7(6), has been declared unconstitutional. Section 302 is a general statute which is not exclusively limited to review of decisions declaring portions of the Illinois Criminal Code unconstitutional, rather it covers any appeal from a decision declaring a statute, whether civil, criminal, or probate, etc., unconstitutional. No case law has been cited to us, nor have we discovered any in our research, declaring that section 302 governs the determination of when criminal charges are considered dismissed where a criminal statute has been declared unconstitutional. Thus, section 302 merely expedites the appellate process, and does not accurately reflect when the Illinois Supreme Court would consider a criminal charge "dismissed" for purposes of setting bail.[6]
 
 
 17
 The best indication of when the dismissal of criminal charges becomes final is contained within the language of Ill.Rev.Stat. ch. 110A, Sec. 604, requiring the posting of a bond pending appeal if there exists "compelling reasons" to detain. The fact that the statute, approved by the Illinois Supreme Court, provides for the setting of bail if compelling reasons exist indicates that the Illinois Supreme Court considers the charges to be still in existence when it permits a trial court to set bail pending final determination. The court certainly would not allow bail to be set unless the charges were considered to be still pending until final adjudication. For example, ch. 38, Sec. 114-1, referred to in section 604(a)(1) which governs when the state may take an appeal, contains a list of motions to dismiss from which the State may take an appeal. Certainly, if the State is permitted to take an appeal and petition a court to hold a person to bail where the indictment has been dismissed for the reasons enumerated in ch. 38, Sec. 114-1, it may also do so when a venue statute, such as ch. 37, Sec. 702-7(6), has been declared unconstitutional since in either case a final determination has obviously not yet been rendered. In his argument before this court, the petitioner does not contend that it was improper for the State to assert its right to request bail under the statute because the State did not have proper jurisdiction to do so under section 604(a)(1).[7]
 
 
 18
 Illinois case law, although not directly on point, also indicates that a trial court decision determining the disposition of a criminal charge is not considered to be final until the direct appeal route is exhausted. See People v. Harvey, 53 Ill.2d 585, 294 N.E.2d 269, 272 (1973) (this is a case construing language from the Unified Code of Correction which states that if the sentences provided within the Code for a particular offense is of shorter duration than the sentence under the prior statute, the lesser sentence applies "[i]f the offense being prosecuted has not reached the sentencing stage or final adjudication." Ill.Rev.Stat. ch. 38, Sec. 1008-2-4.); see also People v. Johnson, 25 Ill.App.3d 503, 323 N.E.2d 539 (1975); People v. Lobb, 9 Ill.App.3d 650, 292 N.E.2d 750 (1973). Further, our research suggests, and both parties to this case seem to agree, that for those cases appealed to the Illinois Supreme Court under Section 604, if the state prevails at the appellate level, the trial below is reinstated from the point where the proceedings were adjourned at the time of the appeal.[8] See, e.g., People v. Bailey, 31 Ill.App.3d 1045, 335 N.E.2d 550 (1975); cf. People v. Tomasello, 98 Ill.App.3d 588, 54 Ill.Dec. 35, 424 N.E.2d 785 (1981). This likewise confirms our view that the substantive charges are not considered to be dismissed for purposes of setting bail, but rather they are suspended until a final appellate determination is made by the court with the highest jurisdiction or the time to appeal has expired. In Illinois "all prosecutions of felony shall be by information or by indictment." Ill.Rev.Stat. ch. 38, Sec. 111-2(a). The prosecutor, not the appellate court, is the person who has the sole discretion in determining whether to bring a charge. People v. Moran, 94 Ill.2d 41, 67 Ill.Dec. 790, 792, 445 N.E.2d 270, 272 (1983); People v. Pankey, 94 Ill.2d 12, 67 Ill.Dec. 804, 807, 445 N.E.2d 284, 287 (1983). Thus, if the charges were considered to be actually dismissed by the trial court, the appellate court could not remand for continuation of the trial, but rather would leave the determination of whether or not to recharge the defendant in the hands of the prosecutor. We do not believe that this is the result intended by the Illinois Supreme Court when the State takes an appeal from a decision of the trial court under section 604.
 
 
 19
 The State raises a valid argument when it states that no matter how the Illinois Supreme Court decides the issue of the constitutionality of the Automatic Juvenile Transfer statute, the petitioner in any event will face trial on the charges of attempted murder and armed robbery. Should the State lose its appeal, charges will be filed either in the juvenile trial court or a motion will be brought before that court requesting transfer of the attempted murder and armed robbery charges to the adult court system. See Ill.Rev.Stat. ch. 37, Sec. 702-7(3). On the other hand, if the State prevails in this appeal, the trial will continue from the point of the previous adjournment in the adult court system. Thus, the State asserts that regardless of the outcome of its appeal the petitioner should be held to bail since, under the unique circumstances of this case, he will ultimately face trial on the two serious pending charges. The petitioner, however, contends that the State did not have to appeal the trial court's ruling, but instead could have instituted another action in juvenile court and attempted to remove it to the adult court system, see, Ill.Rev.Stat. ch. 37, Sec. 702-7(3), and "[h]aving made this choice [to appeal], Respondent [the State] may not come back now and argue [that the] minor Petitioner's detention pending its appeal of the order dismissing his indictment is lawful because Taylor Fitzgerald will be tried as a juvenile if the State loses its appeal in the Illinois Supreme Court." Petitioner's reply brief at 7 (explanations added).
 
 
 20
 We find the petitioner's reasoning unpersuasive. The language of section 302 stating "[a]ppeals from final judgments of circuit courts shall be taken directly to the Supreme Court (1) in cases in which a statute ... of this State has been held invalid ..." could be interpreted as requiring the State to appeal the decision where a state statute has been held unconstitutional. See Committee Comments, Ill.Ann.Stat. ch. 110A Sec. 302 (Smith-Hurd 1984 Supp.) ("When a circuit court holds a statute unconstitutional, that decision should be reviewed and the problem resolved as promptly as possible.") This interpretation quickly disposes of the petitioner's assertion. However, even if one does not read the statute as requiring the state to appeal, but rather interprets it as simply an appeal expediting statute, it nevertheless appears that the state should take the initiative and appeal where a State statute, which appears proper on its face, has been declared unconstitutional. For the prosecution to do otherwise not only would be a waiver of its right to appeal the trial court's ruling, but also would constitute an abrogation of its obligation to the citizens of the state of Illinois to support the laws of the state.[9]
 
 
 21
 B. Speedy Trial.
 
 
 22
 Next, the petitioner challenges his period of detention as a violation of the Sixth Amendment right to a speedy trial. The State counters that because the petitioner failed to raise this argument previously but instead asserted before the district court "that his right to challenge the validity of his indictment was unfairly burdened" by his detention, he is now precluded from raising the speedy trial violation argument on appeal. State's brief at 18.
 
 
 23
 From our review of the record, it appears that the petitioner did raise his speedy trial argument in the state court system in his motion to the Illinois Supreme Court requesting release pending appeal when he argued that this Sixth Amendment right was violated by his continued detention where no charge was pending. Further, although the speedy trial argument was not raised as clearly as it might have been before the district court in his habeas corpus petition, the district court apparently was cognizant of the argument since it specifically referred to the alleged Sixth Amendment violation in its memorandum order. Given these circumstances and the Supreme Court's extreme reluctance, as expressed in Barker v. Wingo, 407 U.S. 514, 525, 92 S.Ct. 2182, 2189, 33 L.Ed.2d 101 (1972), to consider the waiver argument when a fundamental right is involved, such as the right to a speedy trial, we are compelled to address the merits of the petitioner's speedy trial violation claim.[10]
 
 
 24
 Initially, we note that the petitioner's requested relief for the alleged Sixth Amendment violation is unclear, nevertheless we interpret his Sixth Amendment challenge as requesting a ban from any further prosecution of the charges against him. In the petitioner's other arguments presented for our consideration, the requested relief was release pending the State's appeal and was based upon the assertion that either there are no pending charges to hold him, or the "compelling reasons" language used in section 604(a)(3) is unconstitutionally vague, or the bail set by the Illinois trial court is unreasonably high. In asserting the speedy trial right, if the petitioner is now also asking us to release him pending the outcome of the State's appeal, his speedy trial claim is without merit as his release certainly will not accelerate the appeal decision and his eventual trial. Further, if a fundamental right, such as the right to a speedy trial, has been violated by his continuing detention, it certainly cannot be cured by his release since it would be inappropriate to assume that this type of constitutional violation could be remedied by anything other than dismissal of the case with prejudice. Thus, we assume that the petitioner is asking this court to bar the state from further prosecuting his case because of the alleged Sixth Amendment violation. As noted in the Supreme Court's Barker decision, to bar the state from prosecution is a severe remedy. See id. at 522, 92 S.Ct. at 2187. It must be considered with the utmost importance and, because of the amorphous quality of the speedy trial right, any alleged violation will only be evaluated on a case-by-case basis. Id. at 530, 92 S.Ct. at 2192. Factors to consider in making this determination are the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Id.; see also Dean v. Duckworth, slip op. No. 83-1664, 83-1765, at 6 (7th Cir. July 31, 1984); United States v. Herman, 576 F.2d 1139 (5th Cir.1978).
 
 
 25
 Thus, "[t]he length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." Barker, 407 U.S. at 530, 92 S.Ct. at 2192. Certainly the fact that the petitioner has been awaiting the outcome of the State's appeal for some eight months is enough to provoke an inquiry into the particular circumstances of the delay in this case.
 
 
 26
 "Closely related to length of delay is the reason the government assigns to justify the delay." Id. at 531, 92 S.Ct. at 2192. In this case the State obviously had justifiable reasons for taking its appeal. As previously mentioned in this opinion, whether or not section 302 could be interpreted as requiring the State to take its appeal, it is certainly in the State's best interest to appeal a trial court's finding that the recently enacted Automatic Juvenile Transfer statute is unconstitutional.[11] In United States v. Herman, 576 F.2d 1139 (5th Cir.1978) the Fifth Circuit sounded a cautionary note when reviewing the propriety of the justification for the delay by stating that where the "defendant is incarcerated because of inability to make bond pending the government's interlocutory appeal, we must analyze the propriety of the appeal more carefully." Id. at 1146. This further scrutiny entails reviewing: (1) the necessity of taking the appeal; (2) the strength of the government's position on the appealed question; and (3) the seriousness of the crime. Id.
 
 
 27
 In the instant case, the petitioner contends that the state could have elected to prosecute him in juvenile court rather than take appeal on the issue of the constitutionality of the transfer statute to the Illinois Supreme Court. However, we have previously answered this assertion by noting the utmost importance of the State's appeal in this case. Further, the necessity of this appeal was not caused by any ill-conceived actions of the State. In bringing the petitioner to adult court for trial, the State was simply following the statute's edict. As to the second consideration, it appears from our vantage point that the State has a more than even chance of succeeding on appeal, given a court's usual deference to legislative enactments responding to serious social issues, such as serious crimes allegedly committed by juveniles, and the rational relationship test which would be applied to this equal protection challenge. See United States v. Bland, 472 F.2d 1329, 1333-35 (D.C.Cir.1972). Further, the charges of attempted murder and armed robbery, taken at face value, are two of the most serious violent crimes found in the criminal statutes. Thus, the issue of the constitutionality of this Juvenile Transfer statute presented by the government in its appeal is of the utmost importance to the citizens of the state of Illinois.
 
 
 28
 The third factor concerns "the defendant's responsibility to assert his right." Barker, 407 U.S. at 531, 92 S.Ct. at 2192. As previously discussed in this section of our opinion, we have concluded that the petitioner's assertion of his Sixth Amendment speedy trial right was timely. Thus, the final factor to consider is whether the petitioner has been unduly prejudiced by the delay in this case. Id. at 532, 92 S.Ct. at 2193. The Supreme Court in Barker identified three interests to consider: "(i) to prevent oppressive pre-trial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." Id. As to the most important of these factors, there appears to be no evidence at this time that the petitioner's defense to these charges has been, or will be, impaired by the delay. Further, in Barker, the Court noted in passing that the defendant had spent ten months in jail prior to his trial but did not find this period of incarceration controlling in determining whether his right to a speedy trial was violated. Barker, 407 U.S. at 534, 92 S.Ct. at 2194. Also, in Herman, a time span of roughly 15 months caused by the government's appeal was not considered to be so unduly prejudicial to the defendant as to outweigh all the other factors involved in the speedy trial right determination. Herman, 576 F.2d at 1145. In citing these cases, we of course are not inferring that they be used as a measuring stick in determining the appropriateness of the period of detention when weighing the various factors delineated in the Barker decision. Certainly, we understand that because of the State's appeal the petitioner's liberty has been restrained during this period of confinement. We, however, conclude that the State acted in good faith in taking its appeal to the Illinois Supreme Court and, thus, the petitioner's incarceration during the pendency of this appeal and his delay in being brought to trial does not violate his Sixth Amendment right to a speedy trial. If the Illinois Supreme Court does not render its decision sometime in the fall of 1984, whether the petitioner's continued detention would become so oppressive as to constitute a violation of the Sixth Amendment under the facts of this case is another question that we leave for another day as the problem is not before us at this time.
 
 
 29
 C. Void for Vagueness.
 
 
 30
 The petitioner also challenges the language in section 604(a)(3) on the basis that it is unconstitutionally vague on its face since the statute does not delineate what constitutes "compelling reasons." In the alternative, the petitioner asserts that section 604(a)(3) is unconstitutional as applied to the petitioner. We will first address the facial challenge to the statute.
 
 
 31
 The typical void for vagueness analysis involves two steps. The first step involves determining whether there has been adequate notice of sanctions to potential offenders of the statute, while the second involves determining whether the statute invites arbitrary and discriminating enforcement. Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). The void for vagueness challenge was developed to eliminate statutes that embodied either of these dangers to due process.
 
 
 32
 In this case, the petitioner apparently asserts that his attorney was unable to properly advise him as to the risks of further confinement if he prevailed on his challenge to the Automatic Juvenile Transfer statute because of the vague language in section 604(a)(3) allowing a trial court to hold a person to bail if there existed "compelling reasons." Citing a number of void for vagueness cases, the petitioner suggests that because he could not adequately assess the risk of being held to bail, the statutory language of "compelling reasons" flunks the first prong of the void for vagueness test. The petitioner's use of the usual void for vagueness analysis to challenge the validity of section 604(a)(3) is not convincing since this section is not framed in terms of delineating sanctions for prohibited conduct, such as those involved in disorderly conduct, or anti-loitering or vagrancy statutes. Rather, in those cases reciting a void for vagueness analysis, they use this analysis to review the constitutionality of statutes which allegedly have failed to give proper notice of required or proscribed conduct. See, e.g., Kolender v. Lawson, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) (anti-loitering and identification statute); Smith v. Goguen, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974) (statute proscribing a "contemptuous treatment" of the American flag); Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) (anti-noise statute); Nova Records, Inc. v. Sendak, 706 F.2d 782 (7th Cir.1983) (drug paraphernalia statute); Fleuti v. Rosenberg, 302 F.2d 652 (9th Cir.), aff'd on other grounds, 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1962) (immigration deportation statute). The void for vagueness analysis has also been applied to attacks upon both criminal as well as civil or regulatory statutes. Fleuti, 302 F.2d at 655. " 'It was not the criminal penalty that was held invalid, but the exaction of obedience to a rule or standard which was so vague and indefinite as really to be no rule or standard at all.' " Id. at 655, quoting, Small Company v. American Sugar Refining Company, 267 U.S. 233, 239, 45 S.Ct. 295, 297, 69 L.Ed. 589; See, e.g., Hoffman Estates v. Flipside, Hoffman Estates, 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) (involving licensing ordinance for drug paraphenalia shops); City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 102 S.Ct. 1070, 1075, 71 L.Ed.2d 152 (1982) (suggesting that at least a minimal void for vagueness analysis may apply in a refusal to license case); Hirschkop v. Snead, 594 F.2d 356 (4th Cir.1979) (construing a rule banning out-of-court statements by participating criminal trial attorneys). All of these cases have one thing in common: a sanction, whether it be penal or a refusal to grant a license, for allegedly engaging in certain conduct proscribed by a statute. It is the definition of that proscribed or regulated conduct which gives rise to the notice concerns expressed in Grayned. Here, however, the language in section 604(a)(3) is directed not at any sort of conduct in which the petitioner may engage. Rather its language is directed to judges who must ascertain whether compelling reasons exist which justify holding a person to bail under the statute. Thus, we conclude that this notice prong of the void for vagueness analysis has little, if no, application to a judge's determination that "compelling reasons" exist to hold the petitioner to bail.[12]
 
 
 33
 Although no case has been cited to us wherein a court went through the extended void for vagueness analysis where a statute, such as section 604(a)(3), was under consideration, we do recognize the possibility that arbitrary application of this statute by a trial court judge exists. However, assuming arguendo that the second prong of the analysis applies--arbitrary and discriminatory enforcement--we still do not find a sufficient basis to hold this statute unconstitutional on its face. Cognizant that we must not interpret a law as being constitutional where it is in fact unconstitutional, we still must:
 
 
 34
 " 'extrapolate its allowable meaning.' Here, we are 'relegated ... to the words of the ordinance itself,' to the interpretations the court below has given to analogous statutes, and, perhaps to some degree, to the interpretation of the statute given by those charged with enforcing it."
 
 
 35
 Grayned, 408 U.S. at 110, 92 S.Ct. at 2299.
 
 
 36
 We first note that there are several inherent protections within section 604 itself which protect persons against arbitrary decisions. First, if a person is held to bail under 604(a)(3), he or she is entitled to appellate review of the bail amount under section 604(c). Before the commencement of this action in the federal district court and now here on appeal, the petitioner's bail situation was reviewed not once, but on two separate occasions by the Illinois Supreme Court and in each instance the petitioner's request for release or a decrease in bail was denied. Second, as in this case, a hearing is held to determine whether the facts of the particular case warrant a finding that compelling reasons exist. While not totally assuring that a decision cannot be arrived at in an arbitrary manner, the built-in safeguards of a separate hearing affords protection from an arbitrary decision and further creates a record for appellate review. Finally, the statute is used by judges familiar with the applicable statute, its case law and rules of construction. Thus, it should be construed in light of the statute's own language, decisions addressing the statute, and other statutes to determine whether section 604(a)(3) can be interpreted constitutionally.
 
 
 37
 Since Sec. 604(a)(3) admonishes that a person is not to be held to bail unless "compelling reasons" exist, it is apparent that the language in the statute creates a presumption in favor of release and thus provides some uniform guidance in application, while allowing judges the needed flexibility to consider the multitude of factual circumstances which may exist in any given case. The statutory language which creates the presumption, "unless compelling reasons exist," certainly narrows the statute's field of application. However, a question does arise as to how the phrase "compelling reasons" should be interpreted. One possible point of confusion is whether those factors used to determine the amount of bail, such as the seriousness of the crime, risk of flight, or any prior juvenile or criminal record, etc., may also be used in determining whether compelling reasons exist. Essentially, the question is whether it is necessarily inconsistent to use the same factors in determining the amount of bail as those used in determining whether there are compelling reasons. Even though the statute may appear confusing, if one looks at how the factors are to be applied under the Illinois statutory scheme, when considering that section 604(a)(3) does in fact create a presumption in favor of release, the statute becomes much clearer.
 
 
 38
 The factors mentioned are normally used to determine the amount of bail. See Ill.Rev.Stat. ch. 38, Sec. 110-5; see also People ex rel. Hemingway v. Elrod, 60 Ill.2d 74, 322 N.E.2d 837 (1975); People v. Officer, 10 Ill.2d 203, 139 N.E.2d 773 (1957); People v. Ealy, 49 Ill.App.3d 922, 7 Ill.Dec. 864, 365 N.E.2d 149 (1977). Thus, if a crime is serious or there is an inherent risk of flight then bail will usually be set at a higher amount to ensure the defendant's presence at trial. Conversely, if the crime charged is not of a serious nature the amount of bail required will obviously be less. Under section 604(a)(3), the "compelling reasons" language indicates that situations involving aggravated circumstances must exist before the court may hold a person to bail. This is consistent with the language of the statute creating a presumption in favor of release. Thus, if a person is charged with a murder, it is reasonable to expect that the trial judge will find that compelling circumstances exist in compliance with section 604(a)(3). In fact, case law in Illinois certainly indicates that an indictment for murder is considered to be a compelling reason sufficient enough to overcome the presumption favoring release. See People ex rel. Davis v. Vazquez, 92 Ill.2d 132, 65 Ill.Dec. 262, 441 N.E.2d 54 (1982); People v. Edwards, 105 Ill.App.3d 822, 61 Ill.Dec. 582, 434 N.E.2d 1179 (1982) (in passing, the appellate court noted that the crimes involved in this case, attempted murder and solicitation to murder, were sufficient enough to constitute compelling reasons. Id. 61 Ill.Dec. at 827, 434 N.E.2d at 1184); People v. Nolan, 102 Ill.App.3d 895, 58 Ill.Dec. 403, 430 N.E.2d 345 (1981).[13] Thus, not only may the murder charge be used to determine whether compelling reasons do exist, but also this charge can be used to determine the amount of bail which the person should be required to post during pendency of the appeal. However, if the charge was operating an auto without the owner's consent ("O.A.W.O.C."), given the presumption contained in the statute, this alone, absent a prior record or cataloged propensity to flee, obviously would not be sufficient to hold the person to bail, although if section 604(a)(3) were not at issue, the charge of O.A.W.O.C. certainly could be used in setting the amount of bail.
 
 
 39
 The protections afforded within the statute and its surrounding provisions, such as section 604(c), certainly limit the possibility of an arbitrary selection of justifications in finding "compelling reasons." Thus, we hold that the statute is not unconstitutionally vague on its face.
 
 
 40
 Although the statute passes constitutional muster under the void for vagueness test, we next address the petitioner's challenge that section 604(a)(3) was unconstitutionally applied in this case. He asserts that under the circumstances, compelling reasons do not exist to justify holding him to bail. He contends that the trial court in the Sec. 604(a)(3) hearing considered only the charges of armed robbery and attempted murder against him and that this, by itself, is not enough under the statute to constitute compelling reasons. The State, however, asserts that there are at least five compelling reasons justifying his being held to bail. They include: (1) the violent nature of the crimes; (2) the strength of the State's case against the petitioner; (3) the fact that the petitioner will be prosecuted regardless of the outcome of the State's appeal concerning the Automatic Juvenile Transfer statute; (4) the petitioner's lack of ties to the community to assure his appearance in court; and (5) the likelihood that the State will prevail in the Illinois Supreme Court on its appeal challenging the trial court's determination that the Automatic Juvenile Transfer statute is unconstitutional.
 
 
 41
 As stated previously in this opinion, it is the State's burden of proof under Sec. 604(a)(3) to establish compelling reasons to rebut the presumption in the statute favoring release pending the State's appeal. Thus, we must review the trial court's hearing under section 604(a)(3) to determine whether the State met its burden.
 
 
 42
 Initially, we note that two of the State's justifications for holding the petitioner to bail, lack of community ties and the likelihood that the State will prevail on appeal, were not expressly considered or referred to by the trial court and we therefore decline to speculate on their merits.[14] Upon our review of the record, the trial judge certainly realized that the State did have to overcome the presumption in the statute favoring release. He initially heard evidence in support of establishing that in fact compelling reasons did exist to hold the petitioner to bail. After ruling that there was sufficient evidence to warrant such a finding, he next heard arguments as to the proper amount of bail to be set. In the first part of its presentation, the State described the charges in the case by informing the court that the crimes charged, armed robbery and attempted murder, constituted class "X" felonies in the state of Illinois. The State then introduced evidence to support the validity of the charges involved. The petitioner's confession to participation in the armed robbery and evidence of the victim's positive identification of the petitioner as the person who fired the gun at him during the escape from the scene were introduced. The petitioner's counsel was allowed to cross-examine and attack the State's case as to the lack of physical evidence substantiating the victim's story that a shooting occurred. After weighing all of the evidence presented and giving both sides ample opportunity to present further evidence to support their respective positions, the trial court ruled that compelling reasons did in fact exist to hold the petitioner to bail.[15] From our review of the record, it is evident that this decision was not arrived at in an arbitrary or capricious manner, much less without consideration. Given the seriousness of the charges involved in this case, the strength of the State's case[16] and the fact that the petitioner will be tried regardless of the outcome of the State's appeal to the Illinois Supreme Court,[17] compelling reasons existed to hold the petitioner to bail under section 604(a)(3).
 
 
 43
 The dissent states that after we disclaimed any intention of conducting a de novo hearing when a habeas corpus case is involved, we proceed to do so in order to construct a foundation of compelling reasons. However, our reference to the de novo review concerns the issue of excessive bail which is addressed in the next section of this opinion and not the issue of whether the statute, Sec. 604(a)(3), was constitutionally applied in this case. The dissent further intimates that we find "compelling reasons" based upon each individual factor; however, the dissent somehow fails to understand that it is the combination of factors, and not the consideration of each factor individually, that convinces us that compelling reasons exist. The issue in this case and the provisions of Sec. 604(a)(3) concern whether compelling reasons exist in order to hold a person to bail. We reiterate, since the factors mentioned above can and should be considered when setting bail, certainly the application of logic, reason, and common sense commands that it is proper to consider those same factors when determining whether "compelling reasons" exist to justify the setting of bail in the first instance.
 
 
 44
 D. Excessive Bail.
 
 
 45
 Finally, the petitioner asserts that the $40,000 bail amount, requiring ten percent thereof or $4,000 in cash violates the Eighth Amendment's proscription against excessive bail. In Stack v. Boyle, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 1 (1951), the Supreme Court addressed the issue of what constitutes excessive bail under the Eighth Amendment and stated that bail is not excessive so long as it is "reasonably calculated" to assure a defendant's presence at trial. See also, United States v. Zylstra, 713 F.2d 1332, 1337 (7th Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 403, 78 L.Ed.2d 344 (1983). In this case, the amount of the petitioner's bail was reviewed twice by Illinois trial courts and twice by the Illinois Supreme Court. In determining whether the bail is "reasonably calculated," the federal courts cannot be expected to conduct a de novo bond hearing for every habeas corpus case that comes before it. This would not only further burden the federal court system that now is having difficulty dealing with the increasing number of habeas corpus petitions, but would also represent an unwarranted interference in the operation of the state's criminal justice system. Finetti v. Harris, 609 F.2d 594, 600 (2d Cir.1979); Simon v. Woodson, 454 F.2d 161, 165 (5th Cir.1972). "Thus, the only issue to be resolved by a federal court presented with a habeas corpus petition that complains of excessive bail is whether the state judge has acted arbitrarily in setting that bail." Id.
 
 
 46
 The petitioner here asserts that the bail is excessive since he is an indigent, he has no prior history of convictions or bond forfeitures, he has a stable family and concerned parents willing to supervise his activities during the pendency of appeal and, unlike the normal pretrial detainee situation, the charges against him have been dismissed, and thus he has a greater liberty interest at stake. There are, however, counterveiling considerations present in this case, such as the seriousness of the charges, the strength of the government's case against the petitioner, and the fact that he will be tried, either in adult or juvenile court, depending upon the outcome of the state's appeal to the Illinois Supreme Court. Given all of these considerations which the record establishes the trial court weighed in arriving at its decision in setting bail, it is our opinion that it did not act unreasonably or arbitrarily in setting the $40,000 bail, requiring a $4,000 cash outlay. The present financial inability of the petitioner to meet his bail is certainly a consideration and a concern which must be taken into account when determining the appropriate amount of bail, but it is neither the only nor controlling factor to be considered by the trial court judge in setting bail. See White v. United States, 330 F.2d 811 (8th Cir.1964). While we may not necessarily agree with the amount of bail set, we will not overrule the state trial court's determination as to the amount of bail unless its decision was made in an arbitrary manner. Here it was not.[18]
 
 III.
 
 47
 For the reasons stated in this opinion, dismissal of the petitioner's habeas corpus petition was proper.
 
 
 48
 PELL, Senior Circuit Judge, dissenting.
 
 
 49
 While I commend Judge Coffey for his scholarly analysis of the various issues in this troublesome case, and although the manner of disposition of most of the issues is acceptable to me, I cannot agree with the ultimate result reached in that opinion, and I therefore respectfully dissent.
 
 
 50
 In wending our way through a maze of intricate legal technicalties, it sometimes is easy to forget that we are in the process of applying those technicalities to a human being, one who lives in a nation which has constitutionally guaranteed to its inhabitants certain inalienable rights. In the present case we are concerned with a human being who has not yet reached maturity, who by one act has undoubtedly disqualified himself from being considered the outstanding boy citizen of the year, but who, despite his presumed innocence and a judicial dismissal of the indictment against him, has remained imprisoned since his arrest nearly a year ago.
 
 
 51
 Further, this high school student at the time of his arrest had no prior criminal convictions or delinquency adjudications. Despite the fact that his parents were both present in court and agreed to monitor his activities and assure his presence at trial, bail was set at an amount that because of indigency was tantamount to a denial of bail.
 
 
 52
 The statute of Illinois clearly states that a person in the position of petitioner cannot be detained or even held to bail "unless there are compelling reasons." I cannot agree with the public defender that this exception to the statute is unconstitutionally vague. In the first place, "compelling" is not an obscure or exotic word. Similar to the phrase "beyond a reasonable doubt,"[1] the word is an English word of common acceptance and understanding. The word may have slightly different meanings dependent upon the context in which it is used, perhaps more appropriately it may have different shadings of the same meaning. Essentially, it follows the pattern of the dictionary definitions of "forcing," "impelling," "driving," "demanding," or "intending to convince." Actually, the word is no stranger to judicial attention. It is usually found in conjunction with other words such as "reason," "circumstances," "factor," "interest," and "need," etc. Decisions are in both federal and state courts. United States v. Detroit Vital Foods, Inc., 407 F.2d 570, 573 (6th Cir.1969) (A person may not be required to supply information which may possibly incriminate him upon penalty of suffering a forfeiture of his property; this is a "compelling" which is prohibited by the Fifth Amendment.) Sherrill v. Knight, 569 F.2d 124, 130 (D.C.Cir.1977) (Given these important first amendment rights implicated by refusal to grant White House press passes to bona fide Washington journalists, such refusal must be based on a compelling governmental interest.) Perhaps as good a shorthand definition of the word as any is that contained in Castillo v. State of Alaska, 614 P.2d 756, 760 (Alaska 1980) in which the court had before it one of the Alaska rules of criminal procedure to the effect that hearsay testimony not subject to a recognized exception could be presented to the grand jury only upon a showing of compelling justification. For this purpose, the court equated "compelling" with "necessity."
 
 
 53
 Interestingly enough in Sherrill, supra, even though the court stated that protection of the President was not only a "compelling" but probably "overwhelming" interest, nevertheless, "[a]t the same time, the standard does specify in a meaningful way the basis upon which persons will be deemed security risks, and therefore will allow meaningful judicial review of decisions to deny press passes." Id. at 130. Here, we simply have no way to give meaningful judicial review.
 
 
 54
 That brings me to what I regard as the chief deficiency of the proceedings in the state court. The trial judge simply failed to articulate what reasons were sufficient to be "compelling" for holding this youth to a bail which he could not possibly meet. As I read this record, the public defender was correct in characterizing what happened as being that the petitioner was detained solely because of his presumed guilt despite the constitutional presumption of his innocence. This contravenes 200 years of constitutional history and renders meaningless the presumption of innocence, a right secured only after centuries of struggle.
 
 
 55
 In my opinion the writ of habeas corpus should have been granted and the petitioner released unless the state trial court within a specified period of time should after a further hearing articulate "compelling" reasons for holding the minor petitioner to a bail which he could not meet. The majority opinion states that the federal courts cannot be expected to conduct de novo hearings on every habeas corpus case that comes before it, but then proceeds in effect to do so on the rather meager record in this case and to construct a foundation of compelling reasons. This should not be our task and from my view of the record the state court which had the hearing if it had compelling reasons did not state what those compelling reasons were nor indeed that there were compelling reasons. I find no support in the case presented to us for the majority opinion's statement that the state trial court's decision was not arrived at in an arbitrary or capricious manner, much less without consideration.
 
 
 56
 The majority opinion then proceeds to set forth what may have been the reasons although we have no way of knowing what was in the state trial judge's mind. First, there is mentioned the seriousness of the charges involved in the case. The present case is not shown to be one where the release of an indicted but untried person would likely be followed by the commission of further crimes while the person was at large or that he would not be present for trial nor is it the case of a person who has been finally convicted and who objects to the denial of parole because it would deprecate the seriousness of the crime.
 
 
 57
 The majority opinion next refers to the strength of the state's case. "To infer from the fact of indictment alone a need for bail in an unusually high amount is an arbitrary act." Stack v. Boyle, 342 U.S. 1, 6, 72 S.Ct. 1, 4, 96 L.Ed. 1 (1951). This is not a habeas case, however, typical of many which come before the court where the basis for habeas relief is that in some respect there was a denial of due process in the trial with an almost candid concession of guilt. While it is not directly before us in this habeas proceeding the public defender points out that evidence of the petitioner's guilt was not nearly as clear cut as the respondent has suggested to the court. Because the majority relies for one of the prongs supporting "compelling reasons" that of the strength of the state's case, I set forth extracts from the petitioner's reply brief:
 
 
 58
 Complainant's initial report to the police immediately following the crime was for armed robbery alone and made no mention that anyone shot at his head.... The attempt murder charge[2] was added to the complaint five days later, when complainant apparently told the investigating officer the dubious story that Petitioner shot at his head from point blank range, after the robbery, but missed when complainant "saw what was coming and ducked his head out of the way." ... Furthermore, Petitioner's admission (which inculpates himself only as an accomplice) was obtained in violation of the Illinois Juvenile Court Act requiring notification of a minor's parents of his arrest and detention. Ill.Rev.Stat., 1981, Ch. 37, par. 703-2(1) .... This fact weighs heavily against a finding of voluntariness. People v. Travis [122 Ill.App.3d 671, 78 Ill.Dec. 535, 462 N.E.2d 654] (1st Dist., 3d Div., 1984). In addition, the admission apparently was obtained more than 11 hours after the minor was taken into custody ... and may well be subject to suppression prior to trial. Finally, Respondents' attempt to enhance complainant's credibility with the claim that he is a teacher is rendered somewhat less convincing by the fact that complainant has no business phone, ... had himself been convicted of battery, and at the time of the incident had just been placed on court supervision for a weapons violation.
 
 
 59
 (The supporting documentation for the above extracts were before the district court.)
 
 
 60
 Finally, the majority finds a compelling reason in the fact that petitioner is going to be tried anyway if the Supreme Court of Illinois should hold the statute unconstitutional. This is unfortunately speculation based upon what is the present intention of the prosecutor and should be of little significance in deciding whether petitioner's detention should be continued into a second year. In any event, apparently if the statute is held unconstitutional petitioner apparently would have to go through the juvenile procedures which might well have a different impact procedurally.
 
 
 61
 The phase of the case which is truly unfortunate in my opinion, and cannot now be remedied, is that rather than petitioner having been returned to the high school which he was attending at the time of the arrest under nonmonetary conditions of release such as continuing to attend school, reporting frequently to a probation officer and with his parents charged with monitoring his activities, he instead has been thrown into associations which whenever his release occurs will undoubtedly leave him an embittered person with a distinct possibility of his having picked up proclivities from those with whom he of necessity associates during his extended period of confinement. Perhaps recidivist punks should be kept off the streets, but only after their status as such has been established by due process means.
 
 
 
 *
 The Honorable Edward Dumbauld, Senior District Judge for the United States District Court for the Western District of Pennsylvania, is sitting by designation
 
 
 [1]
 This law took effect on September 8, 1982. Previously, a delinquency petition would have been filed in the juvenile court system and the case would have been removed to the adult court system only after a determination by a specially designated juvenile judge that the alleged crime would best be tried in the adult court system. See Ill.Rev.Stat. ch. 37, Sec. 702-7(3)
 
 
 [2]
 The trial court determined the statute violated the Equal Protection Clause since the crimes singled out for automatic transfer had been arbitrarily and irrationally selected
 
 
 [3]
 The appeal on this issue was to be heard by the Illinois Supreme Court in June of 1984 with a decision expected in the fall of 1984
 
 
 [4]
 Upon cross-examination, petitioner's counsel questioned the detective as to the physical details of the shooting. The detective testified that the police had not yet recovered the gun or the shell casings from the expired bullets
 
 
 [5]
 In their briefs, both parties have framed the issue as whether the trial court's actions under Illinois law acted as a dismissal of the charge for purposes of holding the petitioner to bail. We agree with this characterization since the issue of whether the charges were in fact dismissed is a question of state law
 
 
 [6]
 In his brief, the petitioner also argues that since one cannot take away a person's liberty where the charge was never issued, De Jonge v. Oregon, 299 U.S. 353, 362, 57 S.Ct. 255, 259, 81 L.Ed. 278 (1937), and it is equally impermissible to take away a person's liberty where a charge is issued, but unsupported by probable cause, Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), it is "no less a denial of due process to take away one's liberty on a charge based upon an indictment that has been dismissed." Petitioner's Brief at 6. However, this argument begs the question of whether the charge has been "dismissed" for purposes of setting bail during the pending of the state's appeal
 The petitioner also cites the "ABA Standards for Criminal Justice" Standard Vol. IV, 21-1.4 (1982 Supp.) to support its position that bail cannot be set during the pendency of the State's appeal. This standard provides, in part:
 "Pending an appeal at the instance of the prosecution, special provision should be made as to the custody of the defendant. Where the trial court has dismissed the indictment on substantive grounds or the court has otherwise upheld a motion that terminates the prosecution, the defendant should be released on nominal bail or his or her recognizance until final decision on the appeal. In other cases, defendant should not be denied liberty pending determination of a prosecution appeal unless there is cogent evidence that the defendant will not abide by the judgment of the appellate court."
 However, even the A.B.A. standard recognizes that bail may be set; it just suggests that in those cases other than where there is evidence that the defendant may not abide by the appellate court's judgment, the bail set should be nominal. Thus, in order to hold the person to any bail amount, this standard implicitly recognizes that a charge still must exist.
 
 
 [7]
 Section 604(a)(1) states:
 "In criminal cases, the State may appeal only from an order or judgment the substantive effect of which results in dismissing a charge for any of the grounds enumerated in Section 114-1 of the Code of Criminal Procedure of 1963; arresting judgment because of a defective indictment, information or complaint; quashing an arrest or serving a search warrant; or suppressing evidence."
 The petitioner did not raise at the January 4, 1984 hearing the issue of whether the state had the right to appeal under this statute. He did raise it in his motion before the Illinois Supreme Court for release or reduction in bail. The Illinois Supreme Court, however, has denied his petition for reduction in bail on two different occasions. For purposes of this appeal, we will not consider the issue waived.
 Section 114-1 of the Code of Criminal Procedure, referred to in section 604(a)(1), contains a list of motions to dismiss, including subsection (a)(6) which provides for dismissal where "the court in which the charge has been filed does not have jurisdiction." Assuming that the petitioner had raised the issue of whether the state had the right to appeal under Section 604(a)(1), we would hold that the right to appeal under the statute did exist. Here, the trial court ruled that the statute governing transfer of certain juvenile offenders to adult court was unconstitutional, and thus the court was without jurisdiction to try this juvenile as an adult.
 
 
 [8]
 Petitioner's reply brief at 5; State's brief at 6
 
 
 [9]
 Further, even if the State followed the petitioner's suggestion and commenced prosecution in the juvenile system, followed by a petition for removal to the adult system, the petitioner may not have been in a better position since the State could appeal under Sec. 604 any decision of the juvenile court denying the State's request to transfer a case to the adult court system while requesting that the juvenile be held to bail. See People ex rel. Davis v. Vazquez, 92 Ill.2d 132, 65 Ill.Dec. 262, 268, 441 N.E.2d 54, 60 (1982). Thus, in either event the petitioner would be waiting for final adjudication concerning whether he would be tried in juvenile or adult court
 
 
 [10]
 The petitioner's right to trial under Illinois law within 120 days from the time of the indictment is tolled during the pendency of the state's appeal. See Ill.Rev.Stat. ch. 38, Sec. 103-5(a). We, however, agree with the petitioner that the tolling of this right under the Illinois statute does not affect our analysis of whether the petitioner's Sixth Amendment right to a speedy trial has been violated
 
 
 [11]
 There is case law in this circuit and others holding that absent bad faith, "[i]n calculating the length of delay ... the period of delay attributable to the review of an order appealable under 18 U.S.C. Sec. 3731 [the statute that permits the government to take interlocutory appeals in federal cases] should not be considered." United States v. Herman, 576 F.2d 1139, 1146 (5th Cir.1978) quoting United States v. Jackson, 508 F.2d 1001, 1004 (7th Cir.1975) (explanation added); see also United States v. Bishton, 463 F.2d 887 (D.C.Cir.1972)
 
 
 [12]
 It has been suggested that those statutes which do not involve criminal sanctions, but only involve civil penalties are certainly deserving of a less rigorous review. See Hoffman Estates, 455 U.S. at 499, 102 S.Ct. at 1193. However, a "quasi-criminal" ordinance, in that the sanction has a stigmatizing effect, "may warrant a relatively strict test." Id. Section 604(a)(3) is not a penal statute in the traditional sense, although it may "stigmatize" if a person is held to bail under its provisions
 
 
 [13]
 Given the approval of Illinois appellate courts that a murder charge is itself sufficient to establish compelling reasons, it cannot be argued that section 604(a)(3) is vague in all of its applications. However, "a 'facial' challenge ... means a claim that the law is 'invalid in toto --and therefore incapable of any valid application.' " Hoffman Estates, 455 U.S. at 494 n. 5, 102 S.Ct. at 1191 n. 5
 
 
 [14]
 At the hearing, there was some debate between the State and the petitioner's counsel regarding the petitioner's ties to the community. However, it took place after the trial court had determined that compelling reasons existed to hold the petitioner to bail and was considered by the trial court in only determining the amount of bail to which the petitioner would be held
 
 
 [15]
 Further, given the trial court judge's involvement in this case in that he earlier had ruled the Automatic Juvenile Transfer statute unconstitutional, he was certainly aware that the State had every intention to prosecute the petitioner, if not in adult court, in juvenile court if it lost its appeal in the Illinois Supreme Court
 
 
 [16]
 The petitioner asserts that the seriousness of the charges alone is not sufficient to be considered compelling reasons under the statute since to do so would amount to a conviction prior to trial and thus violate his presumption of innocence. However, as we have construed the statute, the aggravated nature of the charges can be considered in determining whether "compelling reasons" exist. Also, the strength of the State's case was a proper consideration in determining whether compelling reasons exist. This does not violate the petitioner's presumption of innocence. Certainly, if the aggravated circumstances of the crime and the strength of the State's case can be considered in setting the amount of bail (see Ill.Rev.Stat. ch. 38, Sec. 110-4(a); People v. Ealy, 49 Ill.App.3d 922, 7 Ill.Dec. 864, 873, 365 N.E.2d 149, 157 (1977)), it can also be considered in determining whether compelling reasons exist under Sec. 604(a)(3) to hold a person to bail. Further, since we held earlier in this opinion that charges are still pending for purposes of the State's appeal, we decline to accept the petitioner's assertion that his presumption of innocence has been violated by his detention. As stated in Bell v. Wolfish, 441 U.S. 520, 535, 99 S.Ct. 1861, 1871, 60 L.Ed.2d 447 (1979):
 "Without question, the presumption of innocence plays an important role in our criminal justice system. 'The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law.' Coffin v. United States, 156 U.S. 432, 453, 15 S.Ct. 394, 403, 39 L.Ed. 481 (1895). But it has no application to a determination of the rights of a pretrial detainee during confinement before his trial has even begun."
 Id. at 533, 99 S.Ct. at 1870.
 
 
 [17]
 This case is unlike the normal Sec. 604(a)(3) appeal wherein the person who may be subject to the requirements of bail has a greater liberty interest at stake since if the appellate court rules against the state on its appeal, it is more likely than not that he or she will be a free from further prosecution of the charge recited in the indictment
 
 
 [18]
 While this opinion was being circulated, the Illinois Supreme Court overruled the Illinois trial court and decided in People v. J.S, etc., 103 Ill.3d 395, 83 Ill.Dec. 156, 469 N.E.2d 1090 (1984) that the Illinois Juvenile Transfer statute, Ill.Rev.Stat. ch. 37, Sec. 702-7(6), is constitutional. The state of Illinois has now asked us to dismiss this appeal contending that it is moot. We disagree as the challenged action concerning the period of confinement could in all probability be too short a period in duration to allow the question of confinement to be fully litigated. Thus, there are federal question challenges to the statutes involved in this case which we believe are capable of repetition, yet if not addressed now may evade future review. See, e.g., Roe v. Wade, 410 U.S. 113, 125, 93 S.Ct. 705, 712, 35 L.Ed.2d 147 (1973). Therefore, we decline to dismiss this case
 
 
 [1]
 United States v. Lawson, 507 F.2d 433, 442 (7th Cir.1974)
 
 
 [2]
 Attempted murder, although one of the charges of the indictment, was not one of the enumerated offenses of the Juvenile Transfer Act